ISAAC ROMAINE, as Receiver, etc., Appellant, *v.* MICHAEL CHAUNCEY et al., Respondents.

Alimony awarded to an innocent wife by a court of equity, as incidental to a decree of divorce in her favor, is simply an allowance for her support and maintenance; the awarding it is not the enforcement of a debt due to her from her husband, but of the marital obligation of support from which the husband, because of his misconduct, is not relieved by the decree; which obligation is made specific and is measured ·by the court. The allowance made becomes a debt only in the sense that the general duty over which he had a discretionary control has been changed into a specific duty. (Code Civ. Pro. § 1759.)

*Stevenson* v. *Stevenson* (34 Hun, 157), distinguished.

While, therefore, alimony is in one sense property of the wife, it is a specific fund provided for a specific purpose only, whose express limitations take it out of the general law of property, and as it is created by equity, it should have the protection of equity, so that it may not be perverted to a purpose for which it was not intended.

Accordingly *held*, that the court would not lend its aid to compel the appropriation of alimony awarded to a wife in a decree of divorce to the payment of a debt contracted by her and actually subsisting prior to the date of the decree.

*It seems,* a court of equity when applied to for its active assistance in the enforcement of a claim founded upon a bare legal right, will either refuse its aid where granting it will work injustice, or will impose conditions calculated to mitigate or remove the injustice.

Reported below, 60 Hun, 477.

(Argued December 14, 1891; decided January 20, 1892.)

APPEAL from an interlocutory judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 26, 1891, which reversed an interlocutory judgment entered upon an order of Special Term, which overruled demurrers to the amended complaint in the above-entitled action, and directed final judgment in favor of defendants, unless an appeal was taken in sixty days.

This action was brought by plaintiff, who was appointed receiver of the defendant Maria L. Chauncey in supplementary proceedings, to discover and apply assets alleged to be in the hands of the defendant Michael Chauncey, to the payment of a judgment recovered against her March 21, 1884. Michael Chauncey was formerly the husband of Maria L., but on July 16, 1888, in an action brought by her, a decree was rendered by which they were absolutely divorced, and the husband was directed to pay his wife $350 per month alimony. He had no other property belonging to her. The action was originally brought against Michael Chauncey, but upon his demurrer, Maria L. was also made a defendant.

*Geo. V. N. Baldwin* for appellant. The appellant, as receiver appointed by the Supreme Court of the state of New Jersey, has a perfect right to maintain this action in the courts

of this state. (*Runk* v. *St. John*, 29 Barb. 585; *H. Bank* v. *Lacombe*, 84 N. Y. 367, 385; *Kelly* v. *Crapo*, 45 id. 86; *Peterson* v. *C. Bank*, 32 id. 21, 43; *In re Waite*, 99 id. 433.) It is not necessary to show that the receiver has procured leave to sue in New Jersey. (*Barclay* v. *R. M. Co.*, 6 Lans. 25; *Harrison* v. *Maxwell*, 44 N. J. 316.) If the appellant did not have legal capacity to sue, yet it does not appear on the face of the complaint that he does not have such capacity, and that being the case, it follows that the demurrer of the defendant cannot hold, and that the objection cannot be taken otherwise than by answer. (*P. Bank* v. *Donnell*, 40 N. Y. 412.) The complaint sets forth facts amply sufficient to constitute a cause of action. The main principle on which it is founded is that a provision made in a judgment for divorce for a wife's support is liable to be reached and seized by her creditors. (*Stevenson* v. *Stevenson*, 34 Hun, 157; 2 Bishop on Mar. & Div. § 997; *Penguet* v. *Phelps*, 48 Barb. 556; *Galusha* v. *Galusha*, 43 Hun, 181; *Erkenbrack* v. *Erkenbrack*, 96 N. Y. 456; *Eadie* v. *Slimmon*, 26 id. 9; *Forrest* v. *Forrest*, 8 Bost. 640; 25 N. Y. 501; *Burr* v. *Burr*, 10 Paige, 20; 7 Hill, 207; *Miller* v. *Clark*, 23 Ind. 370.)

*Noel Gale* for respondents. Permanent alimony awarded to the wife by a judgment of absolute divorce cannot be subjected to the payment of a judgment against the wife for a debt which accrued prior to the judgment of divorce. (Code Civ. Pro. § 1759; *Burr* v. *Burr*, 1 Hill, 207; *Kurl* v. *Kurl*, 34 Md. 21; *Daniels* v. *Linnsey*, 44 La. 567; *Gunther* v. *Jacobs*, 44 Wis. 354; *Crain* v. *Cavana*, 62 Barb. 109, 120; *Clark* v. *Clark*, 6 W. & S. 85–87; *Pain* v. *Pain*, 80 N. C. 322–335; *Menzie* v. *Anderson*, 65 Ind. 239; *Slattery* v. *Wason*, 151 Mass. 266; Code Crim. Pro. §§ 901, 1769; *Jordan* v. *Westerman*, 62 Mich. 170; *Eadie* v. *Slimmon*, 26 N. Y. 9; *Barry* v. *E. L. Ins. Co.*, 59 id. 587; *Brick* v. *Campbell*, 122 id. 397; *Bliss* v. *Lawrence*, 58 id. 442; *B. N. Bank* v. *Wilson*, 122 id. 478; *Pope* v. *Elliot*, 8 B. Mon. 56; *Holdship* v. *Patterson*, 7 Watts, 547; *Jordan* v. *Westerman*,

62 Mich. 170; *Huckley* v. *Muskegon*, 58 id. 454; *Nichols* v. *Eaton*, 91 U. S. 716.) Upon grounds of public policy, the plaintiff, as a receiver appointed by the court of another state, cannot maintain this action in the courts of this state. (*In re Waite*, 99 N. Y. 433; Code Civ. Pro. §§ 1759, 1772, 1773; Code Crim. Pro. § 901.)

FINCH, J. This case presents an interesting question which we are called upon for the first time to decide. There are no direct and conclusive precedents to be followed; no explicit and specific statutes coming with an appropriate direction; but only a broad general rule on the one side and a just and strong necessity for an exception to it on the other. The question is, whether alimony, awarded to an innocent wife by a court of equity as incidental to a decree of divorce in her favor, can be appropriated by her creditor to the discharge of a debt contracted by her and actually subsisting prior to the date of the decree. The question was different in *Stevenson* v. *Stevenson* (34 Hun, 157), cited as a pertinent authority, for in that case the decree of divorce was granted in 1855, and the creditor's judgments obtained in 1880. A debt contracted by the wife after the decree, presumably for her support, and with natural reliance upon the alimony by the creditor as the means of payment, stands upon a very different footing from a debt of the wife contracted prior to or during the marriage and before its judicial dissolution. In the latter case two new elements enter into the question; one, the imposition of an unfounded duty on the husband, and the other, a perversion of the decree from its definite and intended purpose, and from that authorized by the law.

Alimony, as we all understand, is an allowance for support and maintenance, having no other purpose and provided for no other object. Like the *alimentum* of the civil law, from which the word was evidently derived, it respects a provision for food, clothing and a habitation, or the necessary support of the wife after the marriage bond has been severed; and since what is thus necessary has more or less of relation to the con-

dition, habit of life, and social position of the individual, it is graded in the judgment of a court of equity somewhat by regard for these circumstances, but never loses its distinctive character. If sometimes, as the appellant claims, regard is had to the brutal and inhuman conduct of the husband (*Burr* v. *Burr*, 10 Paige, 20), it serves only to make the court less considerate of his situation and more liberal in its view of the necessities of the wife. Thus the prevailing rule in this country is said to be that where the wife has sufficient means to support herself in the rank of life to which she belongs, no alimony will be allowed : (1 Am. & Eng. Enc. of Law, 485 :) and where the parties are living apart under an agreement of separation by the terms of which the husband has provided adequate means of support, no temporary alimony will be given. (*Collins* v. *Collins*, 80 N. Y. 1.) And when awarded, it is not so much in the nature of a payment of a debt as in that of the performance of a duty. During the marriage the husband owes to the wife the duty of support and maintenance although owing her no debt in the legal sense of the word ; but under the modern statutes, he does not owe to her the duty of paying her debts contracted before the marriage or thereafter if they are solely her's and not at all his. The divorce with its incidental allowance of alimony simply continues his duty beyond the decree and compels him to perform it, but does not change its nature. The divorce and consequent separation are wholly his own fault, and do not relieve him from the continued performance of the marital obligation of support. The form and measure of the duty are indeed changed, but its substance remains unchanged. The allowance becomes a debt only in the sense that the general duty over which the husband had a discretionary control has been changed into a specific duty over which, not he, but the court, presides. The authorities, therefore, cited to the effect that alimony is not strictly a debt due to the wife, but rather a general duty of support made specific and measured by the court seem to me to be well founded. (*Wallingsford* v. *Wallingsford*, 6 Har. & J. 485 ; *Daniels* v. *Lindley*, 44 Iowa, 567 ; *Burr* v. *Burr*, 7 Hill, 207 ;

*Guenther* v. *Jacobs,* 44 Wisc. 354 ; *Crain* v. *Cavana,* 62 Barb. 109 ; *Jordan* v. *Westerman,* 62 Mich. 170.)   And so it follows that, as during the marriage, the husband, while bound to support the wife, was not bound to pay her pre-existing or separate debts, so, after the divorce, he must continue the support, but is not required to pay out of his means furnished for that purpose the wife's antecedent debt.   The decree cannot logically work the miracle of transforming the duty which he does owe into one which he does not, and never did owe ; and yet that result is inevitable if the antecedent creditor is at liberty to swoop down upon the provision and carry it away for his own use.

That result accomplishes another thing.   It perverts and nullifies the decree of the court, and leaves the judgment specifically made for one purpose to operate wholly for another, and so obstruct and destroy the humane intent of the law.   There is no doubt, of course, that the wife's right to alimony comes from the statute and not from the common law.   If that proposition needed the aid of a full and historical argument in its support, such has already been furnished by this court.   (*Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456.)   We must look then to the provisions of the Code of Civil Proceedure, which has recast and reproduced the terms of the previous statutes, to see when and for what purpose alimony may be allowed.   Section 1769 regulates the temporary alimony which may be awarded *pendente lite.*   The terms of the provision are that in an action for an absolute divorce or for a separation, the court may, in its discretion, make orders requiring the husband to pay any sum or sums of money necessary to enable the wife to defend the action or to provide suitably for the education and maintenance of the children of the marriage, or for the support of the wife, having regard to the circumstances of the respective parties.   It seems to me impossible to misunderstand the force or meaning of that provision. Its palpable purpose is to enable the wife to prosecute her suit and save her from starvation or beggary during the process. Is it conceivable that the court making such order is bound to stand silent and submissive while the whole scope and purpose

of its provision is perverted and nullified? If that be so the law of divorce has no help or remedy for the injured wife who happens to be in debt. She cannot hire counsel or feed herself and her children pending the litigation, because her pre-existing creditor seizes the humane provision at the moment it is made. The court might as well not make it at all, and simply say there is no divorce or defense for an indebted wife. Undoubtedly, in such a known state of the law, the court would find some way of making its order effective, as perhaps by interposing a trustee in behalf of the wife, but no one has ever yet supposed that such a safeguard was needed. And why should it be? The antecedent creditor has no equity against the fund; the husband is not bound to furnish it for such creditor's benefit, nor the wife to accept it under a rule which gives her a stone when she asks for bread. And of such character has the allowance of temporary alimony been considered that an assignment of it by the wife to her solicitor as compensation for his services has been disregarded and set aside as being a misappropriation of a fund awarded for a special purpose. (*Jordan* v. *Westerman, supra.*)

Similar considerations pertain to section 1759 of the Code which regulates permanent alimony. The second subdivision is this: "The court may, in the final judgment dissolving the marriage, require the defendant to provide suitably for the education and maintenance of the children of the marriage and for the support of the plaintiff as justice requires, having regard to the circumstances of the respective parties." Thus the court may require the husband to provide for the support of the wife, but may not require him to furnish a fund for the payment of her debts. He never stood under that obligation and the decree of divorce cannot impose it. He has a right to insist that his allowance shall not be diverted to a use for which he did not in fact supply it, and was under no obligation to supply it, and to resist, as he stands here resisting, a claim upon it which, as against him, is wholly unauthorized, and a complete perversion both of the decree and of his duty. The plaintiff in his character of receiver for the judgment

creditor comes into a court of equity in pursuit of equitable relief, into the same court which devoted the fund to the support of the wife, and should decently respect its own authority, and asks the aid of that tribunal to practically nullify its decree, to abandon its humane purpose, to join in an indirect robbery of the husband, to pervert his allowance to an end which he never sanctioned and was not bound to sanction, and to disregard the public policy which seeks to protect wife and children from the pauper's necessity and fate; and he asks this without a pretense of special equity against the fund and solely on the basis of a hard legal right. I have only to say that I think equity ought not to give him that aid, but that having both the power and the opportunity to prevent the perversion of its purpose and to make effective and protect its own decree, it should avail itself of that opportunity and exercise that power by the simple process of refusing its assistance. Under some circumstances the court might be troubled to compel respect for its purpose and prevent a perversion of its order; but there is no such difficulty where the wrong cannot be done except by the consent and with the active participation of the court. We have a right to refuse our assistance, not merely because the equities are balanced, but because those of the defendants are superior and ought to prevail.

I can see the possibility and realize the plausible force of one criticism upon this view of the subject; and that is that there is a legal judgment which cannot be satisfied by execution, and the creditor has a right to pursue in equity the debtor's equitable assets, and the court has no right, upon some sentimental view of the subject, to withhold its aid. Exactly: all that is true: but it assumes the precise point of the dispute, that the wife's alimony is an equitable asset liable generally as property to the payment of her debts. It is property in one sense, but not in the broad general sense of the term. It is a specific fund provided for a specific purpose, with restraint and limitation written all over its face by the very law and decree which brought it into existence. And here I think we may wisely avail ourselves of one of the analogies which the

General Term opinion has furnished for our use. Policies of life insurance in favor of the wife on the life of the husband we have persistently held to be non-assignable. (*Eadie* v. *Slimmon*, 26 N. Y. 9.) We determined that their peculiar character and purpose necessarily took from them the chief and most important characteristic of property in general. As I read the later case of *Baron* v. *Brummer* (100 N. Y. 372), we distinctly held "that such policies should not be subjected to the lien of creditors either of husband or wife; as to the former by the express words of the statute, and as to the latter by the determination of the courts." We took from them the transferable characteristic of property as such and tied them closely to their lawful object and purpose. The argument made now would convict us of error then. Alimony allowed by an order is in one sense a debt due and to become due to the wife, and her property. In the same sense a life policy is a debt to become due or due as to its dividends, and is property in the hands of the assured. The whole force of the argument lies in steadily ignoring the quality and character of the property and treating it as ordinary and general assets. The appellant's criticism upon this analogy is that the doctrine as to life insurance policies was dictated by the act of 1840, and rested specially upon the provisions of that act. So much is undoubtedly true, but does not at all disturb the analogy, for in the present case the similar construction is dictated by the Statutes of Divorce and is derived from the character of their provisions. In both cases a thing which might have had the general and ordinary characteristics of property, transferable by sale and liable to creditors, is taken out of that broad category by the terms of the statutes, whose obvious purpose and aim require a restriction and limitation to which property in general is not subjected. This class of cases indicate that the question is not one of exemptions, but of the right of creditors to a particular fund, which fund created by equity, should have the protection of equity. It does not, therefore, answer the view we have taken of the duty of the court in this case to appeal to the general law of property and the

general duty of the court in respect thereto. The question concerns a species of property of a peculiar and specific character; created and existing for one purpose only, and whose express limitations take it out of the general rule.

The doctrine which I have here invoked, that a court of equity, when applied to for its active assistance in the enforcement of a claim founded upon a bare legal right, will refuse its aid where granting it would work injustice, or would impose conditions calculated to mitigate or remove the injustice, has been repeatedly asserted under the old law which permitted the husband to reduce to his possession and become the owner of the wife's personal property. In such cases equity, not denying the legal right, has yet invariably limited and qualified it by recognizing and protecting the wife's equity, not only against the husband, but against his assignee or judgment creditor. In *Smith* v. *Kane* (2 Paige, 303), the chancellor did not hesitate, where the wife's property was less than was needed for her support, to refuse relief entirely and dissolve the injunction. This class of cases are pertinent only upon the right of the court to withhold its aid where the legal claim, however valid, is wielded to effect a wrong. The equity of the husband in the present case to prevent a perversion of his allowance to an unlawful purpose is entirely clear; that of the wife to receive it under the decree for the specific purpose which led to its award, I think also should prevail over the creditor's claim. During the marriage he had no right, legal or equitable, against her support furnished by the husband, and after its dissolution, without her fault, she ought not to be put in a worse condition. When to these equities are added the duty of the court to control and make effectual its own decree, and the public policy in which its provision is founded, it seems to me that no doubt is left as to the right of the court to dismiss the creditor and refuse him the relief he asks.

The judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.