Annette B. Wetmore, Respondent, *v.* Sarah Taylor Wetmore, Individually and as Trustee, etc., of Samuel Wetmore, Deceased, and Another, Appellants, Impleaded, etc.

*Right of a wife to reach the income of her divorced husband in a trust estate — not limited to income already accrued.*

Where an action is brought by an ordinary creditor to reach the surplus income of a debtor in a trust fund, the remedy of the creditor is not confined to a surplus which has already accrued and accumulated in the hands of a trustee; provision may be made in the judgment directing the application of any future surplus until the debt is fully paid.

The same rule is, *a fortiori*, applicable in proceedings brought by the wife of the *cestui que trust*, who has obtained a divorce from her husband, to secure the surplus income of her husband in a trust fund, where he has fled the jurisdiction of the State and has failed to pay to his wife the alimony directed to be paid to her by the judgment of the court.

Annette B. Wetmore obtained a judgment of divorce from her husband, William B. Wetmore, who was required thereby to provide suitably for the education and maintenance of their three children and for the support of his wife. He was directed to pay $3,000 per annum to his wife and $1,000 per annum to each of his three children. Every remedy given Annette B. Wetmore by the Code of Civil Procedure for the enforcement of these provisions was exhausted, and such remedies proved unavailing by reason of William B. Wetmore's intentional disobedience of such judgment, and by his leaving the State and taking with him all his tangible property for the purpose of nullifying such judgment.

William B. Wetmore was entitled to an income under the following clause of his father's will, viz.:

*"Fifth.* I give and bequeath to my executors, hereinafter named, other than my son, one hundred thousand dollars (in cash or in securities or stocks valued by my executors at that sum) upon trust to keep the same invested and receive the income thereof, and, after deducting reasonable charges for the management of said trust, to apply the net income of the said fund from time to time as it shall accrue to the use of my son, William Boerum Wetmore, so long as he shall live."

In an action commenced by Annette B. Wetmore to have the income of such trust estate paid to her, it appeared that, including the trust fund, William B. Wetmore was possessed of an annual income of $15,000. The income of the trust fund amounted to $4,500 per annum.

*Held,* that the wife and children of the beneficiary of the trust estate should be treated in equity substantially as beneficiaries;

That they were not severed from the personality of the *cestui que trust*, but were embraced within it;

That their use of the trust fund was his use, because of his legal obligation to support and maintain them;

That the right of a wife and children to support out of the income of a trust fund, of which the husband and father was the beneficiary, could not be lost because of the misconduct of the husband which had broken up the family and driven his wife and children to living apart from him ;

That a decree directing the payment of the income to, and for the support of, the wife and children was proper, and while in a proper case such income would doubtless be apportioned in accordance with settled principles, under the circumstances an apportionment was not required for any just purpose, as William B. Wetmore needed none of the income, while his wife and children needed it all and more.

APPEAL by the defendants, Sarah Taylor Wetmore, individually and as trustee, etc., of Samuel Wetmore, deceased, and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of May, 1894, upon the decision of the court rendered after a trial at the New York Special Term.

*S. P. Nash*, for appellant trustee.

*Gerrard Irvine Whitehead*, for appellant William B. Wetmore.

*Flamen B. Candler*, for the respondent.

BARRETT, J. :

This action is founded upon the judgment of this court awarding the plaintiff a divorce by reason of her husband's adultery. In this judgment the husband (the present defendant, William B. Wetmore) was required, to quote the language of the Code, "to provide suitably for the education and maintenance of the children of the marriage and for the support of the" plaintiff. Every remedy given to the plaintiff by the Code of Civil Procedure for the enforcement of these provisions has been exhausted. (See *The Continental Trust Co.* v. *Wetmore*, 67 Hun, 9.) These remedies have proved unavailing, not because of Mr. Wetmore's inability, but because of his factious refusal to comply with the judgment. His disobedience was intentional and his purpose to nullify the judgment deliberate. To effectuate this purpose he left the State and took with him all his tangible property. In plain words, he fled the jurisdiction, defied our courts and left his wife and children to starve.

It appears, however, that there is within the jurisdiction a trust fund, which was created for his benefit and which he cannot remove. The income derivable from this trust fund is now the sole hope of the plaintiff and of his children — and it is this income which is sought to be secured by the present action. The trust in question was created by the fifth clause of the will of Mr. Wetmore's father, which reads as follows :

"*Fifth.* I give and bequeath to my executors, hereinafter named, other than my son, one hundred thousand dollars (in cash or in securities or stocks valued by my executors at that sum) upon trust to keep the same invested and receive the income thereof, and, after deducting reasonable charges for the management of said trust, to apply the net income of the said fund from time to time as it shall accrue to the use of my son, William Boerum Wetmore, so long as he shall live."

Under this clause Mr. Wetmore claims that he is absolutely entitled to the net income of the fund ; that, notwithstanding the divorce and alimony judgment, such net income must be periodically remitted to him in his voluntary exile, and that the plaintiff is remediless with regard thereto. In other words, he claims that because of his flight this court is powerless to enforce its judgment or to act upon the trust which is within its jurisdiction.

We might well say, in answer to this claim, what was said by the Supreme Court of the United States in *Barber* v. *Barber* (21 How. [U. S.] 596), answering an equally bold assertion of the absence of legal redress against perpetrated wrong — by a quotation from the opinion of a distinguished South Carolina judge : " If that argument were to prevail there would be a failure of justice, which our law abhors, and there would be no means of enforcing a decree of a wife against her husband for alimony * * * and upon this occasion I would adopt the course of a very learned judge — ' If there is no precedent, I will make one.' "

We might further answer this claim by a reference to the case of *National Tradesman's Bank* v. *Wetmore* (124 N. Y. 241), and to the remarks of Bradley, J., with regard to equity jurisdiction upon the subjects of fraud and trusts.

We think, however, that the court is not here driven to the extremity suggested in *Barber* v. *Barber* (*supra*), but that the

judgment appealed from, which subjected the income of this trust fund to the provisions of the divorce judgment, can be sustained, both upon principle and precedent.

Why, it may be asked, should not the income of this trust fund be thus subjected? The appellants say, because, under the rule laid down in *Romaine* v. *Chauncey* (129 N. Y. 566), alimony is not, strictly speaking, a debt due to the wife from her husband, nor, consequently, is her claim thereto that of an ordinary creditor. From this postulate the appellants reason that as it is only a creditor who, under the statute, can reach surplus income beyond what is necessary for the support of the beneficiary, the plaintiff — not being such creditor — is wholly without equity.

The answer to this position is that the rights of the wife and children do not depend upon mere definitions of the term "alimony," and that her and their claim to support is higher and greater than that of an ordinary creditor. The question is not whether these children have become, by operation of law, their father's creditors; nor whether the divorce judgment has transformed the wife and husband into the technical relation of creditor and debtor; but whether the provision duly made for her support and for the support of the children — no matter how it may be styled or what it may be likened unto — shall be enforced.

We have said that the claim of the wife and children to support is higher and greater than that of any ordinary creditor. We mean this in a legal as well as in a moral sense, and for this reason : The beneficiary's wife and children *are included in the personal use to which the income of the trust fund is to be applied.* All the cases where surplus income has been applied to the claims of creditors limit the surplus to what may remain after making due provision for the suitable support and maintenance of the *cestui que trust and those dependent upon him.* The court first determines what is necessary for the support, not of the debtor alone, but of him *and his family.* ( *Williams* v. *Thorn,* 70 N. Y. 270 ; *Tolles* v. *Wood,* 99 id. 618 ; *McEvoy* v. *Appleby,* 27 Hun, 44.)

Thus the wife and children are treated in equity substantially as beneficiaries. They are not severed from the personality of the *cestui que trust,* but are embraced within it. Their use is his use. Why ? Clearly because of his legal obligation to support and maintain them.

Thus the legal obligation is interwoven with the trust, becomes part of it and vests in the wife and children, jointly with the beneficiary and *as his family*, the right to support and maintenance out of the trust income. This right surely cannot be lost because of the misconduct of the husband, which has broken up the family and driven the wife and children to living apart from him. ' If Mr. Wetmore had creditors to-day who were seeking the surplus income of this trust fund, would the court give them the entire surplus after providing for his individual support? Would not the court still limit the surplus to what should be left after providing for Mr. Wetmore and his family? That is, for himself and those who are still the subjects of his family obligation? We think this is clearly the logic of the situation.

The legal obligation of the divorce judgment is now substituted for the uncontested legal obligation which existed when the parties were living together. The former is now interwoven with the trust the same as was the latter. And thus the application of the trust income to the support and maintenance of the wife and children under the provisions of the divorce judgment, fulfills the trust direction.

But, further. What is the judgment appealed from but a substitute for the compulsory process whereby the court would have compelled Mr. Wetmore, if present, to apply this very income — when received by him — as required by the divorce judgment. In England similar decrees were granted by the Court of Chancery, founded upon the action of the Ecclesiastical Court, and such decrees were treated as substitutes, rendered necessary by the husband's flight, for the writ of *ne exeat regno.* Thus, in *Watkyns* v. *Watkyns* (2 Atk. 97) it was held that, as the husband had left the kingdom, interest out of trust money should be paid to the wife until he thought proper to return and maintain her as he ought. Lord HARDWICKE said : " I can do no more in this case than Lord Chancellor KING did in the case of *Colemore* v. *Colemore,* where he framed his decree *by way of analogy to the writ of ne exeat regno,* and impounded the fortune of the husband for the wife's maintenance till he should think proper to return."

In *Head* v. *Head* (3 Atk. 295) the chancellor again refers to *Colemore* v. *Colemore* in these words : " And I remember    *  .  *    *

the husband had, after a sentence for alimony, made over his whole estate to trustees, and then went to the West Indies; and upon a bill brought by the wife against the trustees, he (the chancellor) directed them to pay her a considerable maintenance out of the trust estate whilst the husband resided abroad."

The same doctrine was suggested in *Miller* v. *Miller* (1 Abb. N. C. 30) and was fully maintained by the General Term of the third department in *Thompson* v. *Thompson* (52 Hun, 456). In the latter case the question was directly involved, and LANDON, J., met it in these words: "The trial court held, and we think, properly, that the trust created by the will of Gilbert G. Thompson for the support of Charles Thompson extends also to the support of his wife and child, and that a judicial provision for their support out of the income is a proper application of a portion of the income, and paramount to the rights of judgment creditors."

Upon both principle and authority, therefore, we think the application of the trust income to the support of Mr. Wetmore's wife and children, as provided in the divorce judgment, was, under the circumstances, proper.

This view of the case eliminates from the discussion the point that no foundation was laid for the appropriation of surplus income. As the plaintiff was not treated as an ordinary creditor there was no question of surplus properly before the court. There was nothing to be ascertained upon that head. Upon the facts found at Special Term, *without exception*, the entire income was applicable to the support of the beneficiary *and his family, while they lived together.* It was equally applicable to their support when, owing to Mr. Wetmore's misconduct, his wife and children were compelled to live apart from him. As it cannot now be applied to their support, jointly, it must be applied equitably, with due regard to the severance of domestic relations. In a proper case it would doubtless be apportioned in accordance with settled principles. Here, however, an apportionment was not required for any just purpose, as upon the conceded facts Mr. Wetmore needs none of this income, while the plaintiff and the children need it all, and more. The question of Mr. Wetmore's means was necessarily gone into in the divorce action, and it was there found that in March, 1892, he was possessed

— entirely apart from the trust fund under consideration — of an estate in his own right of the value of $200,000 and upwards, producing him an annual income of about $8,500. In the present action it was found that, as far back as the year 1887, or 1888, Mr. Wetmore was possessed of this estate of $200,000, and that his annual income, including the trust fund, was about $15,000. We must assume that this condition of things has continued to the present time. If there were any change of circumstances it was certainly incumbent upon Mr. Wetmore to show it. In the absence of any finding of fact with regard to such change we are bound to enforce the alimony judgment as rendered. The court there allowed Mrs. Wetmore $3,000 per annum, and each of the three children $1,000 per annum. The income derivable from the trust fund is but $4,500 per annum. Thus, even with the application of the entire income, there will still be a deficiency of $1,500 per annum which Mr. Wetmore is required to pay — and which he could be compelled to pay but for his flight. Under these circumstances, to have apportioned the trust income and allowed Mr. Wetmore unconditionally a part of it for his individual support, would have been a mockery of justice. He has more than enough for his individual support without it. If, however, it were apportioned conditionally, what would necessarily have been the condition ? · Certainly the payment to the plaintiff from his other property of a sum equivalent to that apportioned to him. The apportionment would then have been a needless formality. But the court might with propriety make a still more stringent condition, namely, the payment of the entire sum awarded by the divorce judgment. A demand for an apportionment is a demand for equity, and if Mr. Wetmore demanded that equity he should have offered to do the equity of complying with the provisions of the divorce judgment. He cannot, therefore, complain that, while he is in contempt of that judgment, the court has done the plaintiff the partial justice of impounding the arrears and directing the future application of the entire income, from time to time, as it accrues, to the satisfaction in part of his just obligations.

There is nothing in the point that the plaintiff's remedy is confined to the accrued income which had accumulated at the time this action was brought. Even where the action is brought by an ordi-

nary creditor to reach surplus income, it is well settled that the remedy of the creditor is not confined to a surplus which has accrued and accumulated in the hands of the trustees; provision may be made in the judgment directing the application of any future surplus until the same is fully paid. ( *Williams* v. *Thorn, supra.*) The same rule is, *a fortiori,* applicable here. It would be absurd to require a fresh action quarterly. The principle having been once settled, a multiplicity of actions to enforce it will neither be required nor allowed.

The judgment is right and should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.