Court of Common Pleas of Hamilton County
(Division of Domestic Relations).

LILLIAN MAY DANIELS v. WILLIAM FRANCIS DANIELS.

Decided, July, 1915.

*Alimony—Nature of a Judgment for—Attempt of Defendant to Defeat the Order of Court with Reference thereto by Transfer of His Business Interests to a Corporation—Facts Connected therewith Set forth in a Supplemental Petition—Half Interest in the Property Awarded to Plaintiff, and Said Interest Restored to Her.*

An attempt to frustrate an order of court and defeat its judgment for alimony through the organization by the defendant of a corporation and transfer to it of the business enterprises being carried on by him, after the court had intimated to counsel that a decree for alimony would be allowed to plaintiff and an equal division of the property ordered, but before a decree carrying into effect the intention of the court had been entered, constitutes fraud and deceit. The acts of the corporation in such a case will be treated as the acts of the defendant, and the plaintiff may proceed by supplemental petition to secure an order for the assignment and transfer to her of all the right, title and interest in said property awarded to her by said decree.

*H. E. Engelhardt* and *R. M. Ochiltree,* for plaintiff.
*Joseph W. O'Hara* and *M. C. Lykins,* contra.

HOFFMAN (Charles W.), J.

On May 4th, 1915, Lillian May Daniels, the plaintiff, was granted a decree of divorce in this cause from William Francis Daniels, on the ground of extreme cruelty.

In respect to the alimony allowed the wife the decree provided as follows:

"And the court find that the plaintiff and defendant are the joint owners of a business consisting of a dairy lunch room and leasehold at No. 114 East Fourth street, Cincinnati, Ohio, and a four-fifths (4-5) interest in a dairy lunch room and leasehold at No. 334 West Fourth street, Cincinnati, Ohio, and the court

further find that the said plaintiff and defendant on or about the 22d day of January, 1915, had in bank the sum of $8,000, which sum of money was their joint property and of which the plaintiff on said 22d day of January, 1915, received the sum of $3,150.

"It is further ordered and adjudged that the said plaintiff have, possess and enjoy as and for alimony the following described personal property with the right to use, sell or dispose thereof at her pleasure, viz.: all of the right, title and interest of the defendant in and to the business of the said dairy lunch room and leasehold at No. 334 West Fourth street, Cincinnati, Ohio; and the defendant is ordered to transfer to the plaintiff all his right, title and interest in and to said dairy lunch room and leasehold at No. 334 West Fourth street, Cincinnati, Ohio, free, clear and unencumbered of any liens or obligations, except rental under said leasehold from and after May 1, 1915, and this decree shall operate as a full and complete transfer and assignment thereof to the plaintiff; and it is further ordered that the defendant pay to the plaintiff the sum of $1,000 in cash, and the same is hereby made a lien upon all of the property of the said defendant. And in default of any such payment for three days, execution is allowed to issue therefor. And it is further ordered that the defendant deliver to the plaintiff all her wearing apparel and all the household and kitchen furniture which was located in the flat at No. 340 West Fourth street, Cincinnati, Ohio, occupied by the plaintiff and the defendant prior to the filing of the petition herein for divorce and in default of delivery of said household furniture and wearing apparel by the defendant to the plaintiff for three days, execution is allowed to issue thereafter."

The hearing in the divorce proceedings closed on or about April 20th, 1915. A few days previous to May 4th the court advised the counsel of both parties that the plaintiff would be granted a decree and that the plaintiff should receive as alimony one-half the property.

The court further indicated to counsel that it was its intention to give the plaintiff the store at No. 334 West Fourth street, and all the household goods in the flat at No. 340 West Fourth street, and further that the plaintiff should receive an amount of money sufficient to effectuate an equal division of the property. The court finds that the parties and their counsel understood that which the court intended should be incorporated in the decree.

On the fourth day of May, before the decree was filed, Mr. M. C. Lykins, the counsel for the defendant, telephoned the court stating that he thought the decree impracticable, and that it could not be enforced.

On April 26th, articles of incorporation- of the Daniels Dairy Lunch Company were signed by W. F. Daniels, the defendant; M. C. Lykins his attorney; Charles W. Davis, George S. Jackson and James Presly Tygret. The last two of whom, namely, Jackson and Tygret, were strong witnesses for the defendant in the divorce proceedings, and while Charles W. Davis was called by the plaintiff, his testimony was in fact in favor of the defendant: The said George S. Jackson and James Presly Tygret were employees of Daniels at the time of the trial and are employed by him at the present time.

Subsequent to April 26th there were the usual proceedings in the organization of the corporation. The certificate of subscription is dated April 29th and the organization and election of directors on April 30th. W. F. Daniels, the defendant, was elected president, treasurer and general manager of the company; M. C. Lykins, his attorney, was elected vice-president; and another of the incorporators was elected secretary.

The capital stock of the company was $2,000. Daniels subscribed for sixteen shares; Lykins, one; Davis, one; Jackson, one; and Tygret, one.

The company took over all the property of William F. Daniels, a part of which was the dairy lunch- store, owned by said Daniels at No. 114 East Fourth street. The said Daniels paid $800 in cash for his stock and was credited with $800 additional in payment for his property. Daniels testified that the other incorporators paid $100 each. No books have been kept of the financial transactions of the company. The $1,200 supposed to have been paid for stock was not placed in bank and the only evidence concerning it is the testimony of Daniels, who says he can produce it.

The business of the dairy lunch company is conducted by Daniels and his connection with the business of conducting the stores, etc., is in all respects the same as previous to the incorporation of the company.

The premises at No. 334 West Fourth street, in which the dairy lunch business was conducted, were held by William F. Daniels, the defendant, by virtue of a written agreement dated December 19, 1913. The premises, under the conditions mentioned in said agreement, were rented to said Daniels for a period of thirty-six months at a monthly rent of $60.

On May 3d, 1915, one day before the decree was filed in the divorce proceedings, Mr. Lykins, acting ostensibly for the dairy lunch company, opened negotiations with the agent of the owners of the property at No. 334 West Fourth street for the purpose of acquiring that which was termed by Mr. Lykins, "the unexpired term."

On May 5th, 1915, these negotiations were continued. On the seventh and eleventh days of May Mr. Lykins, acting as he states for the company, sent telegrams to the owners as follows:

"Cincinnati, Ohio, May 7th, 1915.  W. K. Benton, 328 Dellefontaine street, Pasadena, Cal.  The Daniels Dairy Lunch Company wishes to have the unexpired term of Fourth street premises, Central Trust Company and my letter to follow explaining. (sgd.) M. C. Lykins."

"May 11, 1915.  W. K. Benton, 328 Delfontain St., Pasadena, Cal.  The Daniels Dairy Lunch Company will pay seventy-one dollars per month if accepted.  (Sgd.) M. C. Lykins."

Mr. Lykins did not keep a copy of the letter that he sent to the owners as per the telegram.

Negotiations were continued and finally on or about May 25th, the Daniels Dairy Lunch Company obtained an agreement from the owners substantially of the same character as that obtained by Daniels dated December 19th, 1913, with the exception that there was an increase of $11 in the rent per month.

On May 10th, at a meeting of Mr. Engelhardt and Mr. Lykins, at the office of Mr. Lykins, a formal settlement was made of the matters contained in the decree and receipts given. The evidence discloses that Mr. Lykins at that time advised the counsel for the plaintiff that the furniture was in the house and had not been removed.

The court had intimated that all the household goods of every character and description would be given to Mrs. Daniels, and counsel on both sides understood the intention of the court.

Mr. Lykins advised his client, W. F. Daniels, that the words "household and kitchen furniture" had reference only to furniture in its narrow sense, and thereupon Daniels removed from the flat all articles, such as rugs, dishes, knives, forks, portieres, etc., not strictly furniture.

The proceedings in reference to the organization of the dairy lunch company, and the negotiations in reference to acquiring a lease or agreement on the premises at No. 334 West Fourth street, were not communicated to the court, nor to the counsel for the plaintiff at any time previous to May 27th, when the dairy company served notice on the plaintiff to vacate said premises.

The plaintiff, Mrs. Daniels, is now in possession of the premises, the same having been formally turned over to her on or about May 12th, 1915.

The court finds that in the organization of the Daniels Dairy Company and the acts incident thereto, it was the intent and purpose of W. F. Daniels, under the guidance and direction of his attorney, M. C. Lykins, to fraudulently defeat and nullify the order of May 4th in reference to the store at No. 334 West Fourth street. It is true that these proceedings were begun previous to May 4th, but not before the court had intimated to all parties that it was its intention to divide the property equally and to give Mrs. Daniels the store at No. 334 West Fourth street.

On May 3d and May 5th, Mr. Lykins was in conference with the agents of the owners in reference to the leasing of the store. That Mr. Daniels and Mr. Lykins intended to defeat the order of the court is evidenced, in a measure, by the fact that they took all the household goods not strictly furniture, well knowing that the court intended that all the goods in the flat should become the property of Mrs. Daniels.

When Mr. Lykins read the decree before its filing and notified the court it was impracticable, he certainly knew at the time that the court did not construe household and kitchen furniture as meaning furniture in its strict sense.

The defendant, Daniels, and Mr. Lykins claim justification on the ground that all their acts were legal and that under the law they had the right to do that which they did do in reference

to the incorporation of the company, the acquiring of the lease on the premises and the taking of the household goods. Whatever may have been their opinion in reference to the legal phase of their acts, it is clear that such acts constitute fraud and deceit taken in connection with the decree for alimony and the facts of this case.

Alimony is not an ordinary asset. It is property, but not in the broad and general sense in which the term is used. It is property set aside for the specific and definite purpose of supporting and maintaining the wife. It can not be applied toward the payment of the debts of the wife incurred before the decree was filed. It is not an equitable asset that may be reached by creditors. It is "not a debt within the purview of the constitutional inhibition against imprisonment for debt." "It is a specific fund provided for a specific purpose with restraint and limitation written all over its face by the very law and decree which brought it into existence." The state is interested in the award for alimony in that the wife may not become a burden on the public; the fund, therefore, on considerations of public policy and equity will be protected. The obligation of the husband to protect the wife continues after the divorce, and the decree usually provides for this support and the state will not permit interference with the means of support by an antecedent creditor or the husband who seeks to nullify the provisions of the decree granting such support. *Fickel et al* v. *Granger*, 83 O. S., 101; *State* v. *Cook*, 66 O. S., 556; *Romaine* v. *Chauncey*, 129 N. Y., 566.

The court has found that the incorporation of the Daniels Dairy Lunch Company was for the fraudulent intent and purpose of defeating the decree of May 4th, therefore Daniels and his associates can not shield themselves under the corporate entity. As fraud vitiates that into which it enters, the acts of the corporation must be considered, in the present instance, as the acts of the defendants individually. *Brundred* v. *Rice*, 49 O. S., 640; *State, ex rel*, v. *Standard Oil Co.*, 49 O. S., 137; *Bank* v. *Trebaine*, 59 O. S., 316.

This cause is now before the court on a supplemental petition, answer and reply. Counsel for defendant contends that the

decree for alimony is final and therefore can not be modified. The court is of the opinion that there is no question of modification of the decree of May 4th now before the court, and therefore the cases cited by the defendant's counsel are not applicable to the issues in the case at bar, which issues as conceived by the court are that by fraudulent acts or a series of acts both before and after the decree was entered, the defendant, Daniels, and his co-defendants, are attempting to frustrate the orders of the court and defeat and nullify the decree. The court at a former hearing on a motion to modify the decree refused to do so, and therefore that question is adjudicated. The court, too, is of the opinion that so long as the parties in the original divorce proceedings are involved in the present case the plaintiff need not bring an independent action, but may proceed by way of supplemental petition, setting forth the facts upon which she bases her prayer for relief.

The court finds that the receipt of May 12th was signed by the attorney for the plaintiffs in total ignorance of the acts and purposes of Mr. Daniels and his attorney as therein mentioned.

The court is of the opinion that the lessors of the premises could legally agree with W. F. Daniels to terminate the agreement of December, 1913, and sign and execute the new agreement of May 25th, 1915. The lessors are not parties to this cause and for want of jurisdiction no order concerning them can be made. The lessors were justified in their belief that W. F. Daniels was the only one concerned in the agreement of December, 1913, and Mrs. Daniels, who was unknown to them and not mentioned in the agreement, can not be made their lessee against their will and objections.

Under the agreement of May 25th, 1915, W. F. Daniels in fraud of the rights of plaintiff and under the name of the Daniels Dairy Lunch Company acquired the right and privileges and incurred the obligations as therein set forth. It is immaterial in this cause to determine the technical character of the lease, viz: to ascertain if it is a lease or a mere agreement. The fact is clear that Daniels, under guise of a corporation, has certain interests in the premises by virtue of this instrument.

The decree of May 4th can not be modified and W. F. Daniels restrained from doing that which is already accomplished; by virtue, however, of the power of the court to protect a decree for alimony an order can be made directing Daniels and his associates acting under the name of the corporation to transfer and assign to the plaintiff, Lillian May Daniels, now Lillian May Summersett, all of said estate and all rights and interests acquired under said agreement of May 25th, 1915.

The court further finds that all the co-defendants of Daniels knew of the fraudulent object and purposes of the organization of the Daniels Dairy Lunch Company, and that they permitted themselves to be used as the instruments by means of which Daniels could deprive his wife of alimony as provided by the decree.

It is therefore the judgment of the court that the defendants be perpetually enjoined from doing any act whereby the estate or interest acquired under the agreement of May 25th, 1915, may be forfeited, transferred or surrendered to any other persons than the plaintiff, and that the defendants be ordered to transfer and assign to the plaintiff all of said estate, right or interest in said premises under said agreement to the plaintiff, Lillian May Daniels, now Lillian May Summersett, and that the defendants be further enjoined from hereafter in any way or by any means whatsoever interfering with or acquiring any interest in the property granted to the plaintiff as shown by the decree of May 4th, 1915.