[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by writ, summons and complaint dated May 10, 1996, filed May 22, 1996 with a return date of June 4, 1996 in which complaint the Plaintiff wife sought a dissolution of marriage, an equitable division of the marital estate, exclusive possession of residence and certain motor vehicles and an allocation of debts all as of record appears.
The Plaintiff was represented by counsel.
The Defendant initially appeared pro se on June 3, 1996.
On September 11, 1996, the matter was claimed for the Family Relations Trial List. CT Page 3114
On November 14, 1996, the Defendant appeared by counsel, and Defense counsel filed an answer to the complaint and a cross complaint.
In the cross complaint the Defendant claimed a dissolution of marriage, alimony, an equitable division of assets, an allowance to defend and other relief.
The parties appeared with their respective counsel on March 4, 1997 and were heard by the Court.
THE COURT MAKES THE FOLLOWING FINDINGS OF FACT.
The Plaintiff, whose maiden name was Gropelli, and whose name at the time of the marriage was McClure, was married to the Defendant on October 7, 1995 at New London, Connecticut.
The parties have resided in Connecticut for at least twelve months prior to the initiation of the instant complaint.
There are no minor children issue of the marriage.
There are no children issue of the marriage and no child has been born to the Plaintiff since the date of the marriage.
The parties are not now, nor have they in the past, been the recipient of welfare or assistance from the State.
The Plaintiff is age 35, appears in good health and her education extended through two years in college per the health form.
The Defendant is age 30, appears in good health and is a high school graduate.
The Plaintiff is employed by the State of Connecticut, Department of Transportation, as a driver of heavy vehicles and she holds a special commercial license.
Plaintiff had previously been employed by the State at Seaside for 17 years.
Additionally, Plaintiff works as a waitress two nights a week. CT Page 3115
This is Plaintiff's second marriage and Defendant's first.
Plaintiff's earnings from her State position are $506.00 gross weekly and $264.00 net (includes a deduction for bonds).
Plaintiff's waitress work is $168.00 gross weekly, $160.00 net. Total $424.00 resulting from both positions.
Plaintiff has debts totalling $26,729.00.
Plaintiff owns certain real estate known as 31 Fleming Court, Groton valued at $113,000.00, with a mortgage of $99,000.00.
The premises at 31 Fleming Court were purchased by the Plaintiff on September 8, 1995 for $112,000.00.
The mortgage payment is $940.00 monthly.
At the time of the purchase of the real estate, Plaintiff's credit card debt was zero.
Plaintiff's first marriage ended in a dissolution in September 1994 after twelve years.
Plaintiff engaged in counseling prior to entering into the present marriage.
Almost immediately after the marriage, the Defendant engaged in the immoderate use of alcohol.
Defendant lost his job right after the honeymoon.
Plaintiff was alarmed by Defendant's use of her car after drinking.
The parties separated on March 26, 1996.
The Defendant was unemployed during the entire marriage.
The Defendant was not truthful in his representations to Plaintiff as to matters of employment.
Defendant did not own a motor vehicle.
Plaintiff made improvements to the Groton real estate and CT Page 3116 purchased appliances for the property.
Defendant's only income was from unemployment compensation of $335.00 weekly.
The Defendant represented to the Plaintiff that he had $60,000.00 in the bank, which turned out not to be so.
At the time of the wedding, the parties received presents and gifts including some cash.
Plaintiff's only kinsman is her grandmother.
Practically all the debt and expenses incident to the wedding were paid for by Plaintiff, putting the same on her credit cards.
Plaintiff's debt, as shown on her financial affidavit, totals $26,729.00.
The various debts incurred incident to the marriage are shown on Plaintiff's Exhibits A, B, C, D and H, and run the gamut of everything from flowers, photographs, cards, bridal matters, gifts, limousine, vocalist, minister, chapel rental, organist and various, sundry expenses incident to the honeymoon, lodgings at inns, dinners, flowers and travel. See also Plaintiff's Exhibits J, K and M.
The time-share unit in Florida was purchased by Plaintiff in 1990.
At the time of her purchase of the Groton property, Plaintiff's down payment was $13,000.00.
Plaintiff has a border at the Groton property who contributes $55.00 weekly.
The Defendant admitted a problem with the immoderate use of alcohol in the past and admitted he had not always been truthful with the Plaintiff.
Prior to the marriage, the Defendant had worked for Tri Star Design and earned $700.00 a week.
Defendant is presently a self-employed mason. CT Page 3117
Defendant served an apprenticeship as a welder.
Defendant's family paid for the wedding reception $1,500.00, and $150.00 for a band.
Defendant's financial affidavit discloses that his weekly gross is $400.00 and net $323.34 when he is working, which is partially dependent on weather conditions.
Defendant shows one debt of $72.00.
ISSUES BEFORE THE COURT
Mindful that there are no requests by either party involving periodic alimony, nor any claims or disputes regarding the real estate owned solely by the Plaintiff at 31 Fleming Court, Groton, and also Plaintiff's time-share property in Florida, nor any disputes as to motor vehicles, household furnishings, bank accounts, savings bonds or retirement plans, the only issue presented to the Court appears to be Plaintiff's request that the Court require the Defendant to pay the sum of $3,500.00 in partial liquidation of Plaintiff's debts incurred relative to the wedding and the honeymoon.
Admittedly, the marriage was brief relative to the parties living together as man and wife, October 7, 1995 to March 26, 1996, when they separated.
It is the Plaintiff's position that the Defendant misled her into believing that he would assist with the various financial obligations incident to the wedding and honeymoon from certain certificates of deposit, which turned out to be non-existent, and that as a result, all the charges and expenses reflected on the exhibits were put on her credit cards.
As indicated above, Plaintiff's only kin was her grandmother, her parents being deceased.
The Plaintiff claims that of her outstanding debts, the sum of $9,000.00 is attributable to the wedding and honeymoon, and as indicated, Plaintiff asks that Defendant be responsible for $3,500.00.
One problem for the Court is the fact that clearly some of the expenses and subsequent debt were incurred prior to the CT Page 3118 actual wedding of the parties by the minister, and whether these obligations can be viewed as joint marital obligations.
The Plaintiff places reliance on Connecticut General Statutes § 46b-81a as authority for her request as to the allocation of debt.
The Plaintiff also urges on the Court the position that many of the expenses involved, photographers, caterers, florists and allied matters, require payment in advance, but are an integral part of the planning for the marriage.
Plaintiff relies for general authority in this area on Roachvs. Roach, 20 Conn. App. 500 (1990) and LaBow vs. LaBow,13 Conn. App. 330, 351 (1988).
Roach is not particularly helpful to the Court.
LaBow is helpful in enunciating a general policy position in the following at page 351.
 "The paramount role of a court when considering domestic relations cases is one of a `court of equity.' The court's equity powers are essential to its ability to fashion appropriate relief in domestic relations cases. The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . These powers, although not expressly given to the court by statute, have been held to be inherent powers of the trial court . . ."
It may well be that the expenditures made under all the existing circumstances as outlined in the findings were improvident, but the Court understands that the marriage ceremony, and all that usually goes with it, is very important to the participants.
Basically, the Plaintiff relies on the court's broad equitable powers as concerns Plaintiff's request that the Defendant be responsible for $3,500.00 of the debt incurred. CT Page 3119
It would appear that the most significant contributing factor to the marital problems and breakup was the Defendant's immoderate resort to the grape, which he acknowledged.
In considering the rather novel issue of debt contracted prior to the marriage by one party, and the possible attendant liability to the other, and mindful that there is no request for periodic alimony by either party, but nevertheless trying to fashion a just equitable result, the Court quotes in part fromChristiano vs. Christiano, 131 Conn. 589 (1945). Page 593.
 "As a basis for a consideration of the two conclusions upon which the trial court grounded its decision, we quote from Scott v. Scott, 83 Conn. 634, 639, 78 A. 314, where, speaking of alimony, we said: `In other words, that which was determined by the judgment in the divorce case was an allowance out of the estate of the husband for the support to which the wife was entitled, and of which she had been deprived through the husband's default in the performance of the marriage contract.' In Wright v. Wright, 93 Conn. 296, 300, 105 A. 684, we said of certain decisions we had cited: `They are based upon the proposition that a decree of alimony does not establish the existence and amount of an antecedent debt or liability. The liability arises from the change of status accomplished by the divorce, and is incidental thereto. It is based upon the duty of the husband to continue to support a wife whom he has in legal effect abandoned. It defines that duty in terms of money, or property, and decrees specific performance of it; and the State itself has a social and financial interest in the performance of that duty.' These statements we repeated in Cary v. Cary, 112 Conn. 256, 152 A. 302, and added (p. 259): `The common-law obligation of the husband to give support to his wife is the foundation upon which alimony in this State rests.' To these quotations from our own decisions, we add this from Romaine v. Chauncey, 129 N.Y. 566, 570, 29 N.E. 826, a case cited in Wright v. Wright, supra: `During the marriage the husband owes to the wife the duty of support and maintenance although owing her no debt in the legal sense of the word; but under the modern statutes, he does not owe to her the duty of CT Page 3120 paying her debts contracted before the marriage or thereafter if they are solely hers and not at all his. The divorce with its incidental allowance of alimony simply continues his duty beyond the decree and compels him to perform it, but does not change its nature. The divorce and consequent separation are wholly his own fault, and do not relieve him from the continued performance of the marital obligation of support. The form and measure of the duty are indeed changed, but its substance remains unchanged.'"
In addition to the foregoing, the Court from the formal exhibits has endeavored to sift through them to try and determine which expenditures clearly benefited both from the instant of the completion of the marriage by the minister to the return of the parties from the honeymoon.
These expenses included the photographic expenses, photo albums, etc., the various inns that the parties stayed at: Holiday Inn, Comfort Inn, Brass Carousel Inn, Gorges Grant Inn, Kittery Inn and Ramada Inn.
In addition, all the gracious dining at the Weathervane, Pfaltzgraff and Outback Steak House.
In addition, gifts purchased during the honeymoon at the Kittery Trading Post.
Both parties rode in and enjoyed the limousine service.
Admittedly, the photographic charge was substantial, $1,324.10.
The sum of these items substantially exceeds Plaintiff's request for a contribution of $3,500.00.
Even though the marriage was brief, presumably the parties both benefited from the expenses noted, which it is clear were all put on Plaintiff's credit cards.
Notwithstanding the brevity of the marriage, the Court proceeds on the premise that both the Plaintiff and the Defendant were happy, and both enjoyed the Maine honeymoon before subsequent realities appeared. CT Page 3121
THE COURT ENTERS THE FOLLOWING ORDERS.
The marriage of the parties is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried.
No periodic alimony is awarded to either party.
The Plaintiff may retain her interest in premises known as 31 Fleming Court, Groton and in the time-share unit in Florida.
Plaintiff may retain the 1987 Oldsmobile and the 1987 Jeep.
Plaintiff may retain her household furnishings and personal effects.
Plaintiff may retain her Charter Oak Credit Union account in the amount of $500.00.
Plaintiff may retain the U.S. Savings Bonds in the amount of $1,800.00.
Plaintiff may retain her Retirement Plan with the State of Connecticut valued at $5,000.00.
Plaintiff shall be responsible for the debts shown on her financial affidavit.
The Plaintiff's request for restoration of her maiden name of Gropelli is granted.
Plaintiff shall return to the Defendant, or make the same available to him for pickup, any of his clothing, tools and personal effects within ten days of the date hereof.
Defendant shall pay to the Plaintiff the sum of $3,500.00 in partial reimbursement of expenses jointly agreed upon to be incurred incident to the wedding and honeymoon.
Mindful of the problems that beset the Defendant, mindful of the seasonal nature of his work and mindful of a complete lack of assets as reflected on his financial affidavit, Defendant's Exhibit 1, the Court grants to the Defendant a period of 8 months to meet the requirement of reimbursement to the Plaintiff for the portion of the expenses allowed by the Court. CT Page 3122
In arriving at its decision, the Court has considered the provisions of C.G.S. §§ 46b-81a, 46b-82. See Caffe vs. Caffe,240 Conn. 79 (1997).
In exercising its equitable powers, the Court seeks a just and equitable result. See Lord vs. Lord, 44 Conn. 370 (1997).
Austin, J.