JOHN WANAMAKER, Respondent, *v.* SIMON J. WEAVER, Appellant.

HUSBAND AND WIFE — LIABILITY OF HUSBAND FOR GOODS PURCHASED BY WIFE — WIFE'S AGENCY A QUESTION OF FACT. A husband living with his wife, who supplies her with necessaries suitable to her position and his own, or furnishes her with ready money with which to pay cash therefor, is not liable for the purchase price of other goods sold to her, of the same character as necessaries, in the absence of affirmative proof of his prior authority or subsequent sanction, the question of the wife's agency being one of fact and not a conclusion of law to be drawn alone from the marital relation.

*Wanamaker* v. *Weaver,* 73 App. Div. 60, reversed.

(Argued June 17, 1903; decided October 6, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 22, 1902, reversing a judgment in favor of defendant entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Van Voorhis* for appellant. The case was submitted to the jury without error. (*Cromwell* v. *Benjamin*, 41 Barb. 558; *Reneaux* v. *Teakle*, 20 Eng. L. & Eq. 345; *Bergh* v. *Warner*, 47 Minn. 250; *Raynes* v. *Bennett*, 114 Mass. 424; *Compton* v. *Bates*, 10 Ill. App. 78; *Davis* v. *Caldwell*, 12 Cush. 512; 2 Lawson on Personal Rel. § 726; Schouler on Dom. Rel. § 61; *Burghart* v. *Angerstein*, 6 C. & P. 690; *Freestone* v. *Butcher*, 9 C. &. P. 643; *Reid* v. *Teakle*, 13 C. B. 627; *Bentley* v. *Griffin*, 5 Taunt. 356.) No errors were committed by the trial court in its rulings on evidence. (Schouler on Dom. Rel. § 64; *Merritt* v. *Briggs*, 57 N. Y. 651; *Pope* v *McGill*, 58 Hun, 294.)

*Harry Otis Poole* for respondent. There was no question of fact as to whether the articles sold were "necessaries." They were concededly so. The trial court erred in submitting this question to the jury, and also in its submission of the law as stated during the trial as to the right of the defendant to show that his wife was abundantly supplied with articles purchased elsewhere. (Schouler on Dom. Rel. § 64; Stewart on Husband & Wife, §§ 94, 95; *Waithman* v. *Wakefield*, 1 Camp. 102; *Keller* v. *Phillips*, 39 N. Y. 354; *Zimmer* v. *Settle*, 124 N. Y. 45; *Manby* v. *Scott*, 1 Mod. 124; *Dyer* v. *East*, 1 Ventr. 42; *Johnson* v. *Sumner*, 3 H. & N. 266.) It is clear from the evidence that the goods were sold on the credit of the defendant and the trial court erred in submitting this question to the jury. (*Tiemeyer* v. *Turnquist*, 85 N. Y. 516; *Kegney* v. *Ovens*, 18 N. Y. S. R. 482; *Lindholm* v. *Kane*, 92 Hun, 369; *Winkler* v. *Schlager*, 64 Hun, 83; *Lamb* v. *Milnes*, 5 Vesey, 520; *Knox* v. *Picket*, 4 Desaus, 92; *Haygood* v. *Harris*, 10 Ala. 291; *Curtis* v. *Engel*, 2 Sandf. Ch. 287; *Matter of Shipman*, 22 Abb. [N. C.] 291; *Graham* v. *Schleimer*, 28 Misc. Rep. 535.)

Haight, J. This action was brought to recover the purchase price of goods sold by the plaintiff to the defendant's wife, in the city of Philadelphia, without the defendant's

knowledge or consent. The defendant and his wife resided in the city of Rochester, and at the time the goods were purchased lived together as husband and wife. It was claimed on behalf of the defendant that while the goods might ordinarily be deemed necessaries they were not in fact such, for the reason that the defendant lived on a salary of $2,000 per year, out of which he delivered to his wife $1,500 in monthly installments of $125 with which to supply his table and purchase her necessary wearing apparel; and at the time she purchased the goods in Philadelphia she was amply supplied with articles of a similar character, and was not in need of the articles purchased. Upon the trial the defendant sought to show the character and the amount of clothing possessed by the defendant's wife at the time she made the purchase of the plaintiff in Philadelphia. This was objected to. The objection was overruled and an exception was taken. The court in discussing the question stated the law to be as follows: "that if a married woman goes to a merchant and within reasonable limitations buys articles suitable for the family use and for her own wardrobe, the presumption is, in the absence of evidence to the contrary, that the husband is liable. But if it appears affirmatively that the lady was abundantly supplied with similar articles, purchased elsewhere, and that there was not, in fact, any reasonable necessity for such expenditure, the husband cannot be held responsible unless there is some affirmative proof of actual authority, outside of the authority the law infers from their marital relations." This view was substantially repeated by the trial judge in his charge to the jury, and an exception was taken thereto. The trial court also submitted to the jury the question as to whether the plaintiff gave credit to the defendant, or to his wife. The verdict was in favor of the defendant.

The only question which we deem it necessary to consider is that raised by the exception to the charge as made, submitting to the jury the question as to whether the defendant's wife was abundantly supplied with similar articles to those purchased at the time of the purchase, and, therefore, the

articles were not necessary for her support and maintenance. The majority of the judges of the Appellate Division appear to have entertained the view that, if the articles purchased by the wife were of the character ordinarily deemed necessaries, such as clothing, table linen, towels and napkins, the merchant was at liberty to furnish her therewith and charge her husband therefor, without regard to the amount purchased or the necessity therefor. In commenting upon the charge of the trial court, they say in their opinion : " We have, therefore, this principle enunciated. That if a wife, living with her husband, seeks to purchase goods of a merchant, the latter must make inquisitorial examination and ascertain whether the family possess an adequate supply of the articles which the wife desires to purchase."

It will readily be observed that while the amount involved in this case is trivial, the principle is of considerable importance. While the question seems to have been considered in the lower courts, it does not appear to have been squarely decided in this court. In the case of *Keller* v. *Phillips* (39 N. Y. 351) the husband had given the merchant notice not to give the wife further credit, and in the case of *Hatch* v. *Leonard* (165 N. Y. 435) the husband and wife lived separate and apart; so that neither of these cases afford us much help in determining the question presented in this case. In the case of *Cromwell* v. *Benjamin* (41 Barb. 558) the General Term sustained the right of a merchant to recover of the defendant for the necessaries furnished to his wife. J. C. SMITH, J., in delivering the opinion, states the law, as he understood it, as follows : " But the husband may be liable for necessaries furnished to the wife, in certain cases, though the existence of an agency or assent, express or implied in fact, is wholly disproved by the evidence, and this, upon the ground of an agency implied in law, though there can be none presumed in fact. It is a settled principle in the law of husband and wife that by virtue of the marital relation, and in consequence of the obligations assumed by him upon marriage, the husband is legally bound for the supply of necessaries to

the wife, so long as she does not violate her duty as wife ; that
is to say, so long as she is not guilty of adultery or elopement.
The husband may discharge this obligation by supplying her
with necessaries himself or by his agents, or giving her an
adequate allowance in money, and then he is not liable to a
tradesman who, without his authority, furnishes her with nec-
essaries." In *Bloomingdale* v. *Brinckerhoff* (2 Misc. Rep.
49 ; 49 N. Y. St. Rep. 142) it was held that in order to entitle
the tradesman to recover from the husband it was incumbent
upon him to show that " the articles supplied to the wife were
not only of the kind usually denominated necessaries, because
their need is common to all persons, but that in consequence
of the inadequacy of the husband's provision they were actu-
ally required for the wife's proper support, commensurate
with his means, her wonted living as his spouse, and her station
in the community."

There are numerous other cases reported in this and other
states bearing upon the liability of the husband for necessa-
ries, but attention has been called to those most nearly in point
upon the question involved in this case. There are, however,
some cases in England where the question appears to have been
more thoroughly considered in the higher courts. In the case
of *Debenham* v. *Mellon* (L. R. [5 Q. B. Div.] 394), BRAMWELL,
L. J., in stating the question involved, says : " The goods were
necessaries in the sense that they consisted of articles of dress
suitable to the wife's station in life ; but they were not neces-
saries in the sense that she stood in need of them, for she had
either a sufficient supply of articles of a similar kind, or at
least sufficient means from her husband or otherwise to acquire
them without running him into debt for them." He then pro-
ceeds to state the cases in which the husband would be liable.
As for instance, where he turns his wife out of doors, or con-
ducts himself in such manner as to oblige her to leave him,
she may provide herself at his expense and pledge his credit
for necessaries, such as food, apparel, lodging and medicine.
In case they are living and cohabiting together and there has
been a custom of contracting short credit as to a class of

articles, such as grocery and meat bills, her authority to order the same may be inferred, not for the reason that it springs out of the contract of marriage, but because of her existing relation as the head of his household ; that the same authority would be inferred in favor of a sister, or a housekeeper, or other person who presided over the management of his house. The judge concluded by holding that the husband was not liable. The same case was subsequently brought up for review in the House of Lords (L. R. [6 Appeal Cases] 24). Lord Chancellor SEL-BORNE then considered two questions. The first was whether the mere fact of marriage implies a mandate by law, making the wife the agent in law of her husband, to bind him by her contract, and to pledge his credit. Upon this point he says that " according to all the authorities, there is no such mandate in law from the fact of marriage only, except in the particular case of necessity ; a necessity which may arise when the husband has deserted the wife, or has by his conduct compelled her to live apart from him, without properly providing for her, — but not when the husband and wife are living together, and when the wife is properly maintained ; because there is, in that state of circumstances, no *prima facie* evidence that the husband is neglecting to discharge his necessary duty, or that there is any necessary occasion for the wife to run him into debt, for the purpose of keeping herself alive, or supplying herself with lodging or clothing." The second question considered by the lord chancellor was whether the law implied such a mandate from the fact of cohabitation. Upon this point he says : " If, therefore, the law did imply any such mandate from cohabitation, it must be an implication of fact, and not as a conclusion of law. There are, no doubt, various authorities which shew that the ordinary state of cohabitation between husband and wife does carry with it some presumption, some *prima facie* evidence, of an authority to do those things, which, in such ordinary circumstances of cohabitation, it is usual for a wife to do, * * * because, in that state of circumstances, the husband may truly be said to do acts, or habitually to con-

sent to acts, which hold the wife out as his agent for certain purposes.   *   *   *   But where there has been nothing done, nothing consented to by the husband to justify the proposition that he has ever held out the wife as his agent, I apprehend that the question whether, as a matter of fact, he has given the wife authority, must be examined upon the whole circumstances of the case.  No doubt, though not intending to hold her out as his agent and though she may not actually have had authority, the husband may have so conducted himself as to entitle a tradesman dealing with her to rely upon some appearance of authority for which the husband ought to be held responsible.  If he has so acted he may be bound, but the question must be examined as one of fact and all the authorities, as I understand them, practically treat it so when they speak of this as a presumption *prima facie*, and not absolute ; not a presumption of law, but one capable of being rebutted."  The chancellor then proceeds to consider the facts in the case and concludes by holding the husband not liable, stating that : " It was argued that because these articles were found to be in some sense necessaries in their nature the husband ought therefore to be bound.  But, even if the husband and wife had been living apart, the husband would not be bound by reason of such things being necessaries if he made a reasonable allowance to his wife and duly paid it ; much less can he be bound in a case like this where they were not living apart and when he made her an allowance sufficient to cover all proper expenditure for her own and her children's clothing."

In the still more recent case of *Morel Brothers and Company, Ltd.*, v. *The Earl of Westmoreland* (L. R. [1 K. B. 1903] 64), it was held that the presumption which arises that the husband has given the wife authority to pledge his credit for necessaries may be rebutted by proof of an arrangement under which a substantial allowance has been made by the husband to the wife for household expenses.  In this case MATHEW, L. J., concludes his opinion by stating: " There is no real hardship to tradesmen involved in such cases as this. They should understand that the question is always one of

agency and it is incumbent on them to prove the wife's agency. They can easily protect themselves from any great risk in such cases, but if they think it answers their purpose better to go on giving credit for goods ordered by the wife without taking any steps to ascertain whether she has authority to pledge her husband's credit, they must run the risk of its ultimately turning out that she has no such authority."

Schouler on Husband and Wife (Sec. 107) sums up the authorities upon the subject as follows : " Not only is the husband permitted to show that articles in controversy are not such as can be considered necessaries, but he may show that he supplied his wife himself, or by other agents, or that he gave her ready money to make the purchase. This is on the principle that the husband has the right to decide from whom and from what place the necessaries shall come, and that so long as he has provided necessaries in some way, his marital obligation is discharged, whatever may be the method he chooses to adopt. Accordingly, in the class of cases which we are now considering, namely, where the spouses dwell together, so long as the husband is willing to provide necessaries at his own home he is not liable to provide them elsewhere. In general, while the spouses live together, a husband who supplies his wife with necessaries suitable to her position and his own, is not liable to others for debts contracted by her on such an account without his previous authority or subsequent sanction." For further authorities and discussions upon the subject see 10 Central Law Journal, 341; 54 Central Law Journal, 472; 18 Am. Law Reg. (N. S.) 412–416 (Judge BENNETT's note); 20 Am. Law Reg. (N. S.) 324 (Judge BENNETT's note); *Clark* v. *Cox* (32 Mich. 204).

The discussion of the English cases, to which attention has been called, covers the points involved in this case. They, in effect, hold, in accordance with the charge made by the judge in this case, that the husband, in defense, may show that the wife was amply supplied with articles of the same character as those purchased, or that she had been furnished with ready money with which to pay cash therefor; that the question of

her agency is one of fact, and is not a conclusion of law to be drawn alone from the marital relation. The conclusions reached in these cases are in accord with the rule as stated by Schouler and some of the decisions alluded to in this state, and we incline to the view that the rule recognized by them is the safer and better rule to follow. It compels the husband to pay in a proper case, and at the same time affords him some financial protection against the seductive wiles exerted by tradesmen to induce extravagant wives to purchase that which they really do not need. We do not participate in the alarm which appears to have possessed the learned justices of the Appellate Division on account of the possible inquisitorial examination to which the wives may be subjected. The anxiety of tradesmen to sell will be sufficient to protect them from any improper "inquisitorial examination." If a wife is going to a merchant to trade, with whom she is acquainted and with whom she has been accustomed to trade upon the credit of her husband, she may still continue to do so until the husband gives notice prohibiting the merchant from longer giving credit to her. But when she goes to a stranger, with whom she has never traded before and where consequently there is no implied authority on the part of the husband to give her credit, and seeks to purchase upon her husband's credit, it is but reasonable and proper that she disclose to the merchant her authority therefor, or for the merchant to request such disclosure.

We have discovered no errors in the rulings of the trial court. The judgment of the Appellate Division should, therefore, be reversed, and that entered upon the verdict affirmed, with costs.

GRAY, VANN, CULLEN and WERNER, JJ., concur; PARKER, Ch. J., dissents; MARTIN, J., absent.

Judgment reversed, etc.