## WILDER v. BROKAW.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. HUSBAND AND WIFE (§ 19*)—LIABILITY OF HUSBAND—NECESSARIES FURNISHED WIFE.

A husband must provide for his wife necessaries according to their situation and condition in life, and, as to third persons, the husband's usual style of living may afford the proper criterion, and the necessaries may include the reasonable and proper requirements for the essential comfort of body and mind.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 133, 134; Dec. Dig. § 19.*]

2. HUSBAND AND WIFE (§ 19*)—EXPENSES INCURRED BY WIFE—LIABILITY OF HUSBAND.

Where a wife living apart from her husband obtained lodging and board at an inn, the husband was not liable for the board and lodging furnished there to her sister remaining with her, in the absence of anything showing the constant presence of a near relative a necessity for the wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 134; Dec. Dig. § 19.*]

3. HUSBAND AND WIFE (§ 19*)—CONTRACTS OF WIFE—VALIDITY.

A wife living apart from her husband may contract in her own name for lodging and board, and become personally liable therefor.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 123; Dec. Dig. § 19.*]

4. HUSBAND AND WIFE (§ 235*)—NECESSARIES FURNISHED WIFE—LIABILITY OF HUSBAND—ISSUES.

In an action against a husband for board furnished the wife living apart from him, evidence *held* to require the submission to the jury of the issue whether credit was given to the wife individually contracting for the board so as to relieve the husband from liability, or whether the credit was extended to the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 850; Dec. Dig. § 235.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Nassau County.

Action by Harry S. Wilder against William Gould Brokaw. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, JENKS, and RICH, JJ.

John F. McIntyre (Eugene L. Bushe and Edward Weiss, on the brief), for appellant.

Arthur J. Baldwin, for respondent.

JENKS, J. The judgment rests upon an innkeeper's charge for the keep of the wife of the defendant when she was living apart from her husband. Within a day or two after the coming of Mrs. Brokaw to the inn, her sister came also, whereupon a larger apartment was assigned to Mrs. Brokaw to accommodate the sister, who remained with Mrs. Brokaw throughout her stay of more than a month. The lodging and the board of the sister were charged in the one account. The claim was for $1,352, and, as the verdict is for $1,409.28, it is evident that the jury found in the full amount, so that we have to consider this item. The jury were instructed that, although a husband was not required to support his sister-in-law, nevertheless they could determine under the circumstances of this case whether the shelter and food for Mrs. Brokaw's sister were not within Mrs. Brokaw's necessaries.

In Keller v. Phillips, 39 N. Y. 354, the court say:

"The husband is bound to provide for her * * * whatever is necessary for their suitable clothing and maintenance, according to his and their situation and condition in life."

Conceding that the word "necessaries" is an elastic term not confined to clothing to cover the body and to food to sustain it, that its scope must be determined in consideration of the wife's station in life, her husband's means and her situation, and even that it may include the reasonable and proper requirements for the essential comfort of the body and the mind (Conant v. Burnham, 133 Mass. 503, 43 Am. Rep. 532), yet I am of opinion that the charge in question should not have been submitted to the jury as one which they might find was within that term. In Hamilton v. Lane, 138 Mass. 359, the court say:

"It has always been held that those articles were to be considered necessary which were suitable to the degree and condition of life of the person to whom they were furnished, having regard to the estate of the infant or the husband; and that it was not to be confined to those which were required to sustain life or to preserve decency. While in certain cases it would be the duty of the court to direct the jury authoritatively that the articles furnished could not be necessaries, in others it would be for the jury to say whether they were such as could come within that class, and also to determine whether in amount, quality, quantity, and value they were suitable and proper in the particular case. Raynes v. Bennett, 114 Mass. 424, and cases cited."

I may add that as to the husband's means, not his actual fortune, but his usual style of living may, as to third persons, afford the proper criterion. I can conceive of a case where a wife living apart

from her husband might be in such an abnormal state of mind or body as would make the constant presence of a near relative a necessity. Or the social requirements might justify the charge for the services of a woman as protector. But in this case, although the presence of Mrs. Brokaw's sister may have been a relief to her solitude or may have afforded the comfort of companionship, it does not appear that any peculiar condition of mind or body made that presence a necessity, and it does appear that Mrs. Brokaw was attended by a maid. The learned court in the course of the trial justly and tersely remarked that Mrs. Brokaw was not required to live the life "of a hermit." I agree that she was not required to shut herself in from the world, but none the less I think that she was not justified in charging the support of her sister for this considerable period of time upon her husband. This case presents an account for the lodging and the food for two women, for substantially the same period, which must be justified on the theory that the husband of one of them perforce of that relationship was bound under the circumstances to furnish as a necessary to his wife this maintenance of her sister, and that his wife as his agent ex necessitate could contract therefor. I think that the verdict cannot stand. See Schouler on Husband and Wife, § 123.

I think that the learned court should have submitted the question as to whom credit was given to the jury. As matter of fact it appears that Mr. Brokaw was a stranger to the transaction. The theory of the action is that Mrs. Brokaw was constituted by law the agent of her husband, for the plaintiff alleges that the liability was incurred at the husband's instance and request. See Wanamaker v. Weaver, 176 N. Y. 75, 68 N. E. 135, 65 L. R. A. 529, 98 Am. St. Rep. 621. But the question there before the court was not whether the wife should be held personally, but whether the innkeeper intended to extend credit to her personally or whether he in effect made the contract with her as the agent of her husband. Arnold v. Allen, 9 Daly, 198. When Mrs. Brokaw came to the inn, the innkeeper, although he knew she was a married woman, could, of course, regard her as one competent to contract for her shelter and food and become liable therefor. Tiemeyer v. Turnquist, 85 N. Y. 516, 39 Am. Rep. 674; Conlin v. Cantrell, 64 N. Y. 217; Crisfield v. Banks, 24 Hun, 159; Muller v. Platt, 31 Hun, 121; Schouler on Husband and Wife, § 109. The innkeeper knew Mrs. Brokaw personally, and had known her before her marriage. It does not appear what conversation was had between him and her at that time. The account upon the books was with Mrs. W. G. Brokaw, and was for rent of apartment, restaurant, sundry charges, and cash, $1,352.33 from December 19th to the following January 22d. When the bills were made up from the ledger, they were sent to Mrs. Brokaw. The innkeeper never made a demand on Mr. Brokaw, and he could not say that they ever sent a bill to him addressed to W. G. Brokaw. The innkeeper, referring to a letter received from Mr. Brokaw's counsel under date of January 6, 1909 (which the court excluded), testifies:

"After we received the letter, * * * I don't think we went on furnishing credit to Mrs. Brokaw very long after that."

But the account ran on until January 22d, and, when Mrs. Brokaw left the inn, the innkeeper held her luggage, and, in order to secure it, she pledged her jewels. It appears that at that time the innkeeper said that he had communicated with Mr. Brokaw, who had refused to pay the bill. However strong or 'weak, here are facts which are relative to the question to whom credit was extended. Debenham v. Mellon, 6 H. of L. App. Cas. at 33 and 34; Stammers v. Macomb, 2 Wend. 454; Pearson v. Darlington, 32 Ala. 243; Carter v. Howard, 39 Vt. 106; Freestone v. Butcher, 9 C. & P. 643–649; Schouler, supra, 109. Wherefore I think that the learned court erred in refusing the submission of this question to the jury. Authorities, supra: Mitchell v. Trainor, 11 Ga. 324, 56 Am. Dec. 421; Jewsbury v. Newbold, L. J. C. L., 26 N. S. 247. But the learned counsel for the respondent insists that there could be no liability on the part of the wife unless she made "an express agreement," and he cites a number of cases wherein this expression was used. But, as I have said, the question in this feature of the case is whether the innkeeper intended to give credit to the wife or to the husband, and this proposition is relevant only so far as it bears upon the intent of the innkeeper. In the eye of the law Mrs. Brokaw was just as free to contract as was Mr. Brokaw, and hence the innkeeper was not dealing with one under any legal disability. By "express agreement" I think that the writers of the opinion mean the distinction "in the manner in which the parties have expressed their agreement," which it is said "consequently affects the nature of the evidence by which the agreement can be proved rather than the nature of the contract itself." 1 Parsons on Contracts (8th Ed.) p. 6, note 1. And Keener on Quasi-Contracts says:

"The terms, 'express contracts' and 'contracts implied in fact,' are used then to indicate, not a distinction in the principles of contract, but a difference in the character of the evidence by which a simple contract is proved. The source of the obligation in each case is the intention of the parties."

The cases cited by the learned counsel present the circumstance of cohabitation when the debt was contracted by the wife for necessaries either for the common family use or at least for her clothing or that of her children while under the common roof. Under such circumstances cohabitation in itself raises a broad presumption of the husband's assent. Debenham v. Mellon, supra, at page 36; Wanamaker v. Weaver, supra, at page 80 of 176 N. Y. (68 N. E. 135, 65 L. R. A. 529, 98 Am. St. Rep. 621); Schouler, supra, § 106; Abbott's Trial Evidence, citing 2 Wharton on Evidence, p. 222. And it appears that the courts in stating their proposition are careful to limit it with the circumstance of cohabitation. Of course, we cannot say, since the decision in Hatch v. Leonard, 165 N. Y. 435, 59 N. E. 270, that the presumption of agency could not obtain upon facts shown, even when the wife was apart, but I am discussing the presumption that arises from cohabitation itself. I think, then, that in the absence of evidence of "an express agreement," as that term is used, the surrounding circumstances may establish an agreement by the wife to make herself personally responsible. In Matter of Totten, 137 App. Div. 273, 121 N. Y. Supp. 942, Scott, J., for the court, says:

"There is no doubt of the rule that the primary liability for medical treatment furnished to a wife rests upon her husband, and that the wife is not personally liable therefor, in the absence of a special agreement by her to make herself responsible. Such an agreement, however, need not be shown by direct evidence, but may be found upon evidence of surrounding circumstances, including acts after the service, indicating an acknowledgment of liability for the service."

And in Conlin v. Cantrell, supra, the court, per Miller, J., say:

"It is true the defendant did not agree specifically to charge her separate estate with the debt, but the surrounding circumstances are such as to lead to the inevitable inference that this was her intention."

The judgment and order are reversed and a new trial is granted, costs to abide the event. All concur.