(153 App. Div. 460.)

### WEST v. WASHBURN, Sheriff.

(Supreme Court, Appellate Division, Third Department. November 13, 1912.)

1. DIVORCE (§ 321½\*)—PROPERTY ATTACHABLE—ALIMONY.
    An attachment of alimony in a proceeding against the former wife issued in an action in tort, was unauthorized, as such an attachment is proper only in an action for such necessaries as the husband would have been obliged to furnish, had the marital relation continued.
    [Ed. Note.—For other cases, see Divorce, Cent. Dig. § 728; Dec. Dig. § 321½.\*]

2. DIVORCE- (§ 258\*)—ALIMONY—DECREE—EFFECT OF SUBSEQUENT AGREEMENT.
    Though, after the entry of a decree of divorce and for alimony, the husband entered into an agreement with the wife to set over to her a portion of his father's estate, the interest from which was the same as the sum directed to be paid as alimony, such an agreement could not have the effect of relieving the husband from the obligation imposed by the decree, and payments will be considered to have been made to satisfy such decree.
    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 690, 729, 730; Dec. Dig. § 258.\*]

3. EQUITY (§ 65\*)—MAXIMS—CLEAN HANDS—APPLICABILITY.
    The doctrine that one who seeks equity must enter court with clean hands applies to the cleanness of the cause of action, rather than to the morality of the individual.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. § 65.\*]

    Kellogg, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by Clara Lucas West against John Washburn, as Sheriff of Saratoga County, to release property attached from the levy. From a judgment releasing a part of the property, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Edward P. White, of Buffalo, for appellant.
Edgar T. Brackett, of Saratoga Springs, for respondent.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOUGHTON, J. The plaintiff is a resident of California, and in an action brought against her by one Anna M. Morris for damages for alienating her husband's affections an attachment was issued to the defendant, as sheriff of the county of Saratoga, commanding him to attach such property of the plaintiff as he should find in his jurisdiction. By virtue of such writ the sheriff levied upon $1,500 past-due alimony, which had been paid by the plaintiff's former husband, from whom she had obtained a decree of divorce, in compliance with such decree, to a third party for plaintiff's benefit, and also upon $200 due upon a debt owing by him to her, as well as upon the plaintiff's interest in a contract whereby her husband had agreed to turn over to her on the 7th day of December, 1914, $60,000 from a legacy then payable to him under the will of his father, which by contract the plaintiff had agreed to accept in lieu of further alimony provided to be paid by the decree.

Thereupon the plaintiff brought this action to release from such levy the $1,500 due her as alimony from her husband, on the ground that it was not subject to attachment in the kind of action which Mrs. Morris had brought against her and in which the attachment was issued. Neither the levy upon the $200 debt due from the husband to the plaintiff, nor the levy upon her interest in the agreement to accept $60,000 in lieu of further alimony was attacked, and the propriety of the levy as to those two items is not in controversy in the present action. The trial court found that the $1,500 of alimony, although past due, was not attachable, and directed its release, and enjoined the further attaching of any installments thereof.

[1] We think the judgment was right, and that it should be affirmed. The authorities are clear that alimony as such cannot be attached in an action against the wife to whom it is awarded, except in an action for such necessaries as the husband would be obliged to furnish, had the marital relation continued. In Romaine v. Chauncey, 60 Hun, 477, 15 N. Y. Supp. 198, and 129 N. Y. 566, 29 N. E. 826, 14 L. R. A. 712, 26 Am. St. Rep. 544, it is held that alimony granted to a wife in an action brought by her against her husband for divorce is granted for the purpose of her support, and that public policy will not permit it to be interfered with and diverted from that channel. This principle was followed in Matter of Bolles, 78 App. Div. 180, 79 N. Y. Supp. 530, where the attorney sought to appropriate alimony for the payment of disbursements in the action itself, and in Matter of Brackett, 114 App. Div. 257, 99 N. Y. Supp. 802, where it was held that the wife could not make a valid contract with her attorney to give him a certain percentage of what she might receive, in an action for separation from her husband, for her support and maintenance.

In Thayer v. Thayer, 145 App. Div. 268, 129 N. Y. Supp. 1035, upon which the appellant relies, the court does use the expression that the amount due the wife for alimony is in the nature of a judgment debt against the husband. The question under consideration in that case was whether or not a judgment should be entered, and

it was only in justification of its entry that such language was used. The question of the character of the alimony and its attachability was not under consideration, and the question here at issue was not there decided.

The action in which the present attachment was issued was to recover damages for a wrong. If no divorce had ever been granted to the plaintiff from her husband, he would not have been liable to pay damages for her torts. He would have been liable for necessaries furnished to her, which he had failed to provide. The alimony which he was directed by the court to pay to her was in lieu of the furnishing of necessaries to her, and would have been attachable, if the action had been brought against the plaintiff for necessaries, but was not attachable, the action being for a tort for which the husband was in no wise responsible.

[2] The main contention of the defendant, however, is that the semiannual payments of $1,500, although called alimony and directed by the decree of divorce to be paid as such, were not alimony at all, but were payments which the husband had agreed by contract with the wife to make to her, and hence were attachable. The interlocutory decree of divorce was granted on the 11th day of December, 1909, and was followed by a final decree granted on the 15th day of March, 1910. On the 10th day of November, 1909, presumably after the plaintiff's action for divorce had been begun, the plaintiff's husband transferred and set over to her $60,000 from his portion of the estate of his father, for her use during her natural life, with the right to spend any part of the principal for her own use and benefit, which she might see fit, but, if any part should remain unexpended at her decease, the same to revert to the husband or his heirs or assigns. On the 11th day of December, 1909, the same day on which the interlocutory decree of divorce was granted, the plaintiff and her husband entered into an agreement in writing. This agreement recited the granting of the interlocutory decree and the direction for the payment of $3,000 a year alimony, and further recited as follows:

"Whereas, the party of the second part [husband] desires the party of the first part [this plaintiff] to accept in lieu of alimony after the 7th day of December, 1912, a gross sum, to wit, $60,000, in the manner provided by a certain conveyance made by the second party to the party of the first part, bearing date the 10th day of November, 1909."

Then followed an agreement to pay the alimony as stipulated by the decree, a ratification of the agreement of November 10, 1909, together with other instruments which had been executed between them, and the further agreement on the part of the husband to pay all household bills theretofore contracted, and rent to a certain time, in consideration of all which the wife, this plaintiff, agreed to accept the $60,000 as provided in the transfer of November 10, 1909, as a gross sum in lieu of alimony after the 7th day of December, 1914.

It is very plain that this agreement was not intended to and did not supersede the decree of divorce. So far as the payment of ali-

mony up to the 7th day of December, 1914, was involved, the agreement was merely supplemental to the decree and subordinate to it. It was entirely unnecessary for the husband to agree to pay the alimony. The decree bound him to do that. The $1,500 which was levied upon was paid as alimony and as directed by the decree. The apparent object of the agreement was the ratification of the various conveyances and agreements had between the husband and the wife, and the fixing of responsibility for household bills and rent, and the agreement on the part of the wife to accept the transfer of the $60,-000 in lieu of alimony after the 7th day of December, 1914. It does not appear in the record why this latter date was selected, but presumably it was because on that date some greater right would accrue to the husband under his father's will than then existed. By the agreement of November 10, 1909, the transfer of the $60,000 interest is not postponed to a future time, but apparently takes effect at once. Notwithstanding this fact, however, although the trustees of the father's estate had knowledge of the transfer, because the plaintiff's attorney was one of such trustees, still the plaintiff and everybody concerned assumed that the plaintiff was not entitled to the income of the $60,000, and it was paid over to her husband, and he in turn paid such part of it as was necessary to satisfy the provision for alimony. It chances that 5 per cent. on $60,000 amounts to $3,-000, which was the amount of the alimony. But that fact does not make the payments which the husband made payments of interest, instead of alimony, and we think the court was entirely justified in saying that the payments which the husband did make were payments in satisfaction of the decree, and not a turning over of interest to the plaintiff, which she was already entitled to under the transfer of the $60,000 interest in his father's estate.

The facts in the case of Andrews v. Whitney, 82 Hun, 117, 31 N. Y. Supp. 164, bear much similarity to those in the case at bar, and the decision illustrates, not only the care with which the courts preserve alimony for the support of the wife and prevent its diversion to other sources, but also the hesitancy which they manifest in permitting outside agreements to interfere with the decree of the court directing it to be paid.

[3] The action is in equity, and the defendant insists that the plaintiff must come into court with clean hands. If the moving affidavits in a judgment creditor's action are to be taken as true, the present plaintiff would seem quite immoral, and it would be quite impossible to characterize her hands as clean. While equity does not employ itself in settling quarrels amongst rogues, still a rogue may have a clean cause of action, and it is with reference to the cause of action which he produces that the maxim of clean hands applies. So far as the present action was concerned, the plaintiff was entirely within her rights in asking that the $1,500 of alimony be relieved from the levy of the attachment.

As we have stated, the levy upon the $200 debt and the interest of the plaintiff in the $60,000 assignment from the estate of the fa-

ther of the husband remains unaffected by this action or by our determination.

The judgment should be affirmed, with costs.

JOHN M. KELLOGG, J. (dissenting). It is a mistake to consider that the moneys attached are alimony. A brief statement of the facts indicates clearly that the attachment should stand.

Anna M. Morris, in January, 1912, brought an action in the Supreme Court against Clara Lucas West, the plaintiff in this action, for enticing her husband away, and, upon an affidavit that the said parties were living in adultery in the state of California, obtained an attachment which was levied by the sheriff upon the $60,000 interest which the said Clara Lucas West had in the estate of George West, which had been assigned to her November 10, 1909, by her former husband, Fred H. West, a son of said George West, and upon $1,500 alimony payable to her, and upon $200 due from him to her upon a note. No money or property was actually taken into the possession of the officer. The levy was made by serving the attachment, with proper notices and inventory, upon Fred H. West and the trustees of his father's estate. This action was brought on the theory that all the interest the said Clara Lucas West had in said estate was a payment of $3,000 a year alimony, and that such alimony was exempt from attachment, and judgment was entered against the defendant herein that the $3,000 per year is exempt from attachment, and restraining the defendant from levying upon any other installment thereof payable after January 20, 1912, with costs. The judgment appealed from purports to be a final determination of the action, and awards final costs. In any event, it is wrong, because it ignores the levy on the $200 note payable from said fund, and ignores the levy upon the $60,000 interest which the present plaintiff has in the estate of George West.

The interlocutory judgment of divorce in favor of the present plaintiff against her husband was dated December 11, 1909, and was entered two days thereafter. It does not appear when the action was brought. November 10, 1909, her husband assigned to her $60,000 of his share in his deceased father's estate, which interest was levied upon by the attachment herein. The value of his interest in his father's estate does not affirmatively appear, otherwise than that it yields an income of about $6,000 per year, which on a 5 per cent. basis would represent $120,000. The assignment purported to take effect immediately, and would carry with it the income on that fund accruing after its date, which at 5 per cent. would be $3,000 per year, from which we infer that the husband had transferred to his wife one-half of his interest in the estate. On the 11th day of December following she and her husband entered into an agreement reciting that an interlocutory judgment of divorce had been granted her that day, and that it provides alimony of $3,000 per year, and the husband desires her to accept, in lieu of alimony, after the 7th day of December, 1914, a gross sum of $60,000 in the manner provided for in the said assignment of November 10th. The in-

strument then witnesseth that, in consideration of $1 to each party by the other paid, the husband is to pay $3,000 per year alimony in semiannual payments on the 20th day of January and the 20th day of July up to the 7th day of December, 1914.

The husband confirms the following instruments executed by him: (1) The assignment of the $60,000 of November 10, 1909. (2) A bill of sale of a Thomas automobile and other personal property. (3) Three promissory notes given by him to her, aggregating $4,000, and an assignment to her of $20,000 interest in his father's estate as security for the notes. (4) A deed of real estate in Saratoga county, known as the Fred West garage lot. (5) A bill of sale of a wagon and other personal property. In addition to which he is to pay all household bills and the rent of the premises occupied by her up to May 10, 1910. The sixth item of said agreement is:

"The party of the first part [this plaintiff] agrees to accept the payments and conveyances above described in full of all claims and demands against the party of the second part for alimony or otherwise, and the party of the first part expressly agrees to accept and receive said $60,000 on the 7th day of December, 1914, as a gross sum in lieu of alimony from and after the said 7th day of December, 1914, in the manner provided by said conveyance made by said Fred H. West to said Clara L. West on the 10th day of November, 1909."

The record indicates a friendly divorce made after a full final settlement. Apparently she was to receive $60,000, besides the other items mentioned, in consideration of the divorce. The interlocutory and final judgment gave her no property rights which she did not have prior thereto. By the assignment she became the owner of $60,000 interest in the estate. The so-called alimony is $3,000, which represents the interest on that sum at 5 per cent. The alimony was to be paid until 1914, when the $60,000 was to be delivered over. The benefits purporting to come to her from the divorce, except the right to remarry and a freedom from her husband, she had secured before the interlocutory judgment. She is not in a position to question the legality of the assignment of November 10th. It was ratified by the subsequent agreement, and it was conceded upon the trial that it was executed and delivered on the day of its date, and that there has been no paper against it, or any changes in it, so far as the attorney representing the plaintiff knew.

It is clear that the father's estate was the sole reliance for the payment of the so-called alimony. The attorney representing the plaintiff in this action and in the divorce action was one of the trustees of the estate. The semiannual payments were to be made at his office, and the payments made were usually made by the check of the estate for the amount of the payment to the order of Fred H. West, he indorsing the check, and the delivery of the check to her by her attorney, the trustee.

To fully understand what the parties were doing, this agreement and the interlocutory judgment, which were signed the same day, must be read together and considered as one transaction, and it then becomes clear that it was understood between the parties that the plaintiff should have no further property rights than those given

to her by the agreement of November 10th. If, as suggested, we assume that, under the will of George West, Fred H. West is entitled to semiannual interest on his share of the estate until 1914, when the corpus is to be paid over, and that nothing was to be paid to him, prior to 1914, but interest, that emphasizes the fact that before the divorce was granted full financial arrangements were made between the parties, and that the alimony provisions of the decree and the agreement of the same date were simply intended as further assurance for the payment of the moneys provided for by the agreement of November 10th. Reading the decree and the agreement of December 11th together, it becomes clear that her interest in the $60,000 is recognized as her property, and that she is to have nothing from her husband, aside from what he had transferred to her before a divorce was granted. The only effect of the agreement of December 11th upon the agreement of November 10th is that it recognized that for some reason the corpus of the $60,000 is not to be paid to the wife until 1914, but that she is to have an amount equivalent to the interest thereon. In other words, it is recognized as hers, but the date of the final payment is postponed.

Alimony is usually a sum granted by the court to the wronged wife to provide the support her husband owes her. This is not such a case. The attachment in question is based upon a cause of action in favor of Mrs. Morris against the present plaintiff for enticing away and living in adultery with Morris, her husband. The papers indicate that this plaintiff and Morris were living in adultery at her home in Saratoga Springs on the day after the interlocutory judgment was signed, and since then have left the state, and are living in adultery outside the state. She was not only not entitled to the divorce, but was violating the criminal law of the state at the time it was granted. Her conduct is so gross that the court is not called upon to draw fine distinctions in her favor. If the facts as they existed had actually been known to the court, the interlocutory and final judgment would not have been granted. The whole matter of a divorce was apparently a matter of previous adjustment and settlement between the parties. It was a divorce which the law does not favor, and in interpreting the decree the court will construe it with reference to the papers executed at the same time and on the faith of which the decree was obtained. Under all the circumstances of the case as disclosed from the record, the court will consider the funds attached as the property of the plaintiff, irrespective of the decree, and will not permit the plaintiff the use of the injunctive order of the court to continue her wrongs against the attachment creditor.

There is no warrant for treating the $60,000 assigned by the agreement of November 10th as alimony. It is payable in bulk in 1914, and was her property before the interlocutory judgment, and perhaps before action brought. The judgment is clearly wrong; so far as it vacates the attachment with reference to that fund. It does not in terms do so; but the interlocutory judgment provides for a perpetual payment of $3,000. The agreement at the worst

modifies the interlocutory judgment, and makes a settlement in gross for $60,000. That sum is clearly attachable. In my judgment, calling the income, which is to be paid semiannually, alimony instead of interest, does not change its character and render it exempt.

I favor a reversal of the judgment upon the law and the facts, and a judgment dismissing the plaintiff's complaint, with costs.