## GLASSER v. ROGERS et al.

District Court, S. D. New York.
Dec. 31, 1943.

Benjamin Leibowitz and Myer Leibowitz, both of New York City (Benjamin Leibowitz, of New York City, of counsel), for plaintiff.

Harry N. Wessel, of New York City (Aaron E. Koota, of New York City, of counsel), for Charles Francis Rogers.

J. William Hill, of New York City, for Helen Russell Rogers.

RIFKIND, District Judge.

This action was tried to the court without a jury.

The plaintiff is the trustee in bankruptcy of Helen Russell Rogers. The defendants are the bankrupt and her divorced husband.

The complaint alleges that the action is brought under Section 70, sub. e(1), of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e (1); that the bankrupt filed her petition in bankruptcy on September 13, 1940, and she was thereupon adjudicated a bankrupt; that on or about June 20, 1931, the bankrupt and her husband entered into an agreement which provided for the payment by the husband to the bankrupt of $11,000 a year until her death or remarriage, and of certain sums for the maintenance of the children of the marriage; that she has not remarried; that the bankrupt's discharge has been denied; that she has been insolvent since 1932; that on January 13, 1938, the bankrupt and her husband entered into an agreement cancelling the agreement of June 20, 1931, making somewhat different provision for the bankrupt, and eliminating the special provision for the children; that on March 19, 1938, they entered into a further agreement whereby the amount payable by the husband to the bankrupt was reduced to $6,000 per annum; that the agreements of January 13 and March 19, 1938, constituted transfers by the bankrupt to her divorced husband, made without consideration, and "fraudulent and void under the laws of the State of New York as to many of the creditors listed in the bankrupt's schedules". The relief demanded is a decree setting aside the transfers, "adjudicating the plaintiff's rights as to any sums that may be payable in the future" by the husband, and a money judgment for such sum as has become due and payable by the husband since the filing of the petition in bankruptcy.

The husband's answer consists of denials and affirmative defenses. The first defense alleges that on June 20, 1931, an absolute decree of divorce was entered in a Nevada court in favor of the bankrupt and that the decree "ratified, approved and confirmed" the agreement of June 20, 1931; that in reliance upon the agreements of 1938 he refrained from applying to the Nevada court for an order reducing the amount awarded for the support and maintenance of the bankrupt by reason of the impairment of his financial means. The second defense alleges that in fact he paid the bankrupt a sum equal in the aggregate to at least $11,000 per annum since the making of the 1931 agreement, notwithstanding the agreements of 1938.

The bankrupt's answer is substantially like the husband's and in addition pleads lack of jurisdiction.

The proof developed few questions of fact. It was established that the husband had paid the bankrupt an amount aggregating more than $11,000 a year. The question remained whether payments in excess of $11,000 made prior to the bankruptcy were advances on account of alimony or were gifts. It appeared that two days before the agreement of March 19, 1938, the husband had given the bankrupt's lawyer money for the purpose of filing a petition in bankruptcy in · her behalf. From this fact the inference is urged that the defendants entered into the 1938 agreements with actual intent to defraud creditors.

■ Our first inquiry is whether the provisions of the 1931 agreement constituted alimony. For present purposes, it is sufficient to consider, not the whole agreement, but only the husband's promise to pay the wife $11,000 per annum. I am of the opinion that it was alimony and that it would belong to that category of obligation whether or not it had been incorporated in a decree of divorce. Clearly it was provision for the support of the wife and was expressly intended to be in lieu of the general and undefined obligation of a husband to support his wife. That no distinction is to be drawn for present purposes between alimony awarded by a matrimonial decree and separate maintenance provided by agreement was held in Stevenson v. Stevenson, 1884, 34 Hun 157. And though that decision has been severely circumscribed by Romaine v. Chauncey, 1892, 129 N.Y. 566, 29 N.E. 826, 14 L.R.A. 712, 26 Am.St.Rep. 544, it has not been challenged with respect to the proposition for which it is here cited.

■ This point is made because the plaintiff argues that even if the husband's original obligation were alimony, it ceased to be that when in January 1938, the parties cancelled the 1931 agreement and failed to incorporate the new agreements in a decree. The Stevenson case indicates that no change was thereby effected in the character of the obligation. Moreover, I think the plaintiff reads the word "cancelled" too literally. Actually, the parties did no more than modify their arrangement by reducing the husband's obligations.

Having concluded that the husband's obligation both before and after the 1938 modifications constituted alimony, the question is opened whether alimony is a special species of property incapable of being fraudulently conveyed; Romaine v. Chauncey, supra; but I need not explore this inquiry since a solution is available by the application of less metaphysical rules.

■ By the leading case of Romaine v. Chauncey, the rule was established in New York that, despite the absence of statutory exemption, alimony was not accessible to the wife's creditors whose claims arose before the award of alimony. "A debt contracted by the wife after the decree, presumably for her support * * * stands upon a very different footing * * *" (129 N.Y. page 569, 29 N.E. page 827, 14 L.R.A. 712, 26 Am.St.Rep. 544).

■ Out of the latter comment has developed a rule that, if a creditor is to have access to alimony in satisfaction of his claims, he must show not only that the claim arose after the award but that it was for necessaries. Matter of Bolles, 1903, 78 App. Div. 180, 79 N.Y.S. 530; West v. Washburn, 1912, 153 App.Div. 460, 462, 138 N.Y.S. 230; Baskin & Co., Inc., v. Howe, 1929, 225 App.Div. 553, 233 N.Y.S. 648; Anna Tappe, Inc. v. Battelle, 1931, 140 Misc. 49, 249 N.Y.S. 589; Conlew, Inc. v. Thompson, 1936, 160 Misc. 551, 289 N.Y.S. 865; Matter of Dunnaway v. Clark, 1940, 174 Misc. 735, 22 N.Y.S.2d 69. True enough, a report of the New York Judicial Council, Seventh Annual Report, 1941, page 345, expresses the view that: "There are indications in some cases that a creditor whose claim arose subsequent to the alimony award will be accorded a remedy against the alimony even though his claim is not one for necessaries." However, an examination of the cases relied on (Anna Tappe, Inc. v. Battelle, supra; Conlew, Inc. v. Thompson, supra) reveals that the indications have not gone to the extent of constituting sufficient evidence in a Federal Court that the State rule has been changed.

In the present case, plaintiff has established that there were creditors whose claims arose after 1931, but the record is barren of proof that the claims represented necessaries.

■ Plaintiff admits the absence of such proof, but advances the argument that it is sufficient that it appears from the face of the claims that they are for goods and services which are generally regarded as necessaries and that, therefore, the burden of going forward has shifted to him who would establish that the wife was already

adequately supplied with such wares. He relies on Wanamaker v. Weaver, 1903, 176 N.Y. 75, 68 N.E. 135, 65 L.R.A. 529, 98 Am. St.Rep. 621. But I do not think the cited case goes quite that far.[1] Indeed, the term "necessaries" ordinarily becomes meaningful only when an attempt is made to impose liability on the husband for the debts of the wife. Clearly in this case, were a creditor attempting to assert such a claim directly against the husband he would fail since the husband has made reasonable allowances for her and duly paid it. Wanamaker v. Weaver, supra, 176 N.Y. page 81, 68 N.E. 135, 65 L.R.A. 529, 98 Am.St.Rep. 621. Consequently in speaking of necessaries, where by hypothesis the husband is not liable, we are using a word which has lost significance. Nevertheless, since the trustee's right to recover depends upon the existence of a creditor with respect to whom the transfer is void, it is incumbent upon him to identify such a creditor and to show that the latter's claim is such that he is in position to complain. I think, in that respect, the plaintiff has failed. Baskin & Co., Inc. v. Howe, 1929, 225 App.Div. 553, 233 N.Y.S. 648.

This failure of proof is but one obstacle to plaintiff's recovery. Other obstacles abound.

Plaintiff has alleged a transfer void under New York law. He has chosen not to specify the precise law upon which his claim is founded. The only two possibilities are sections 273 and 276 of the New York Debtor and Creditor Law, Consol. Laws N.Y. c. 12. If he relies on section 273, then he must prove the bankrupt's insolvency at the time of the conveyance or that the bankrupt was rendered insolvent by the conveyance. However, if the right to alimony is property, which can be fraudulently conveyed, then it should logically be regarded as property and an asset in determining insolvency. Proof has been adduced that at the time of the 1938 agreements the bankrupt had no assets other than the right to alimony but no proof whatever has been offered as to the value of the right to receive $11,000 per annum under the original agreement and decree or

$6,000 per annum under the agreement of 1938.

If plaintiff relies on section 276, then he is confronted by the necessity of showing that a creditor having a provable claim, Bankruptcy Act, § 70 sub. e(1), had a claim for necessaries which arose after June 20, 1931. I have already noted the deficiency of proof in that regard.

In 1941, upon the recommendation of the Judicial Council (Seventh Annual Report, 1941, pp. 343–349), amendments were adopted to sections 792 and 793 of the New York Civil Practice Act, which afford a creditor a limited remedy against a wife who is the recipient of alimony, regardless of whether the claim had its origin in necessaries; Laws of 1941, c. 694. Manifestly, the remedy thereby provided is not the one herein sought to be enforced. Nor do I see how this recent amendment can retroactively taint the transaction consummated in 1938. But even if by some method we could give effect to the intention of the amendment, this court would have to be advised of "the reasonable requirements of the wife" so that it may have an informed judgment as to the portion of income which may be allocated for the benefit of creditors. § 793, N.Y. Civil Practice Act. No such proof has been adduced.

Plaintiff argues that the parties to the agreements, in effect, determined that question when they reduced the alimony from $11,000 to $6,000 per annum. From that fact, the court is asked to infer that $5,000 per annum is available for creditors beyond the reasonable requirements of the wife. But we cannot accept that decision of the parties since, in order that the plaintiff might succeed, the court must find that that decision was designed not to accomplish the purpose of the statute but the fraud of creditors.

As to the alimony allegedly accrued, at the rate of $11,000 per annum, since the filing of the petition, there is the additional barrier to recovery in the fact that the husband has paid an aggregate sum which exceeds his maximum liability. Con-

---

[1] The headnote reads: "A husband living with his wife, who supplies her with necessaries suitable to her position and his own, or furnishes her with ready money with which to pay cash therefor, is not liable for the purchase price of other goods sold to her, of the same character as necessaries, in the absence of affirmative proof of his prior authority or subsequent sanction, the question of the wife's agency being one of fact and not a conclusion of law to be drawn alone from the marital relation."

672

sidering the relationship of the parties, I am unwilling to draw the inference that past excess payments were gifts rather than advances on account of alimony, as the husband claims. The latter is the more natural deduction from the facts; and it should take more than the mere fact of payment to prove a gift from a divorced husband to his former wife, whose contacts are constantly intermediated by lawyers.

▇ Finally, as to future alimony, were it awarded to the trustee he would be confronted with the anomaly of having an asset he could not liquidate. Apparently alimony is not assignable,[2] Romaine v. Chauncey, 129 N.Y. at page 574, 29 N.E. 826, 14 L.R.A. 712, 26 Am.St.Rep. 544; 24 Col.L.R. 801, 802, and is not salable by the trustee in bankruptcy. In re Willett, D.C.N.D.Ill.1926, 20 F.2d 149.

The complaint is dismissed and judgment will be entered for defendants on the merits.

[2] Not until 1915 when VanNess v. Ransom, 215 N.Y. 557, 109 N.E. 593, L.R.A. 1916B, 852, Ann.Cas.1917A, 580, overruled Faversham v. Faversham, 161 App.Div. 521, 146 N.Y.S. 569, was the executor of a deceased wife allowed to recover from the husband alimony accrued and unpaid at time of her death.