[884 NYS2d 848]

# Jan S., Plaintiff, v Leonard S., Defendant.

Supreme Court, New York County, August 28, 2009

**APPEARANCES OF COUNSEL**

*Fox Horan & Camerini LLP*, New York City (*John R. Horan* of counsel), for defendant. *Robert A. Katz*, New York City, for plaintiff.

**OPINION OF THE COURT**

MATTHEW F. COOPER, J.

The sad and unusual facts in this case seem in some ways to spring more from the pages of a Victorian novel like Jane Eyre than from the annals of modern American divorce. The parties were married in their youth more than 40 years ago. They had

no children. Since they separated in 1967, after having lived together for only a year, their lives have taken diametrically divergent paths. The defendant ex-husband has gone on to remarry, have a family, and make a substantial fortune as a financier and business owner. The plaintiff ex-wife has descended into mental illness, poverty and eventual homelessness. But because their 1974 divorce decree requires the ex-husband to pay lifetime alimony, the parties remain tied to one another by a course of postjudgment litigation.

The ex-husband has made a motion to confirm the report of the Special Referee recommending that the ex-wife's latest attempt to increase the $100 a week she receives as alimony be denied. The ex-wife, in turn, has made a cross motion to reject the Referee's report. The ex-wife further seeks to have the court grant the relief sought in the underlying order to show cause, which had been referred to the Referee to hear and report. She asks the court to find that there has been a substantial change in circumstances that requires the award be dramatically increased in order to allow her to cease being dependent on public assistance benefits, to buy or rent an apartment so that she is no longer homeless, and to cover the cost of extensive medical and dental services she states she needs.

In deciding the motion and cross motion, there are a number of more technical issues to consider. These include the requirements of Domestic Relations Law § 236 (A) (1),[1] the ramifications of the ex-wife being a "public charge," the effect of decisions made on prior applications brought by the ex-wife, and the standard to be used in either confirming or rejecting the Referee's report. There remains, however, one fundamental issue that goes to the heart of the matter. That issue is whether the ex-husband is responsible for the needs of the ex-wife— irrespective of how great his financial resources are or how dire her needs may be—simply because they were married to each other for a short period of time in the long-distant past.

## I. Statement of Facts and Procedural History

The parties were married on August 13, 1966, in Acapulco, Mexico during a three-day layover en route to Australia. They were headed to Australia so that the ex-husband could study at

---

1. The parties' 1974 divorce predates the Equitable Distribution Law of 1980. Consequently, the spousal support at issue is "alimony" rather than "maintenance," and it is subject to the provisions of Domestic Relations Law § 236 (A) (1) rather than Domestic Relations Law § 236 (B) (1).

the University of Melbourne on a Fulbright scholarship. Because they learned that it would be easier for the ex-wife to obtain a visa if they were married, the parties, unaccompanied by friends or family, went before a Mexican Civil Registrar to marry them. Both the premarriage formalities and the wedding ceremony were conducted in a matter of minutes and in Spanish, a language neither party spoke.

Once the parties were in Australia, they lived together, with the ex-husband studying and teaching and the ex-wife working on and off as a secretary. Upon their return to the United States in September 1967, the parties immediately separated. The ex-wife went to Maryland and the ex-husband went to New York City. The parties entered into an agreement in 1969 distributing whatever marital property they had. No children resulted from the brief union.

The ex-wife commenced a divorce action in 1971, the same year she moved to New York. The case finally came to trial in January 1974, after which the ex-wife was granted a judgment of divorce and the ex-husband ordered to pay $100 per week in lifetime alimony. In his decision dated February 20, 1974, the trial judge made findings that the ex-wife had not been employed since arriving in New York, had made no efforts to gain employment, and had been receiving "welfare support payments from the New York City Department of Welfare since November 1971."

The ex-wife's circumstances never improved. In November 1974, she began receiving Supplemental Security Income (SSI), a federally funded public assistance program, based on a determination by the Social Security Administration that she suffered from a mental disability. The ex-wife did not return to the workforce and she has been continuously dependent on government benefits, along with her small amount of alimony and, as of very recently, some educational grant money, to support her for the last 35 years.

Over the past 35 years, the ex-wife has made at least four prior applications for an upward modification of the alimony award. The applications were based on developments that the ex-wife argued constituted a change in circumstances. These included the loss of her apartment and subsequent homelessness, her dependency on public benefits placing her "in danger of becoming a public charge," the increased rate of inflation, and the diminished purchasing power of the $100 in weekly alimony.

All the ex-wife's prior applications were denied to the extent that the $100 per week alimony was not increased. In 1994, however, the late Justice Lewis R. Friedman, on the third application to modify the award, ordered the ex-husband to pay the ex-wife's outstanding dental bills. Justice Friedman, as an accommodation to the ex-wife's particular needs, also directed the ex-husband to cease paying the alimony on a weekly basis in favor of paying semi-annually and prospectively in two $2,600 lump sum payments. Since that time, the ex-husband has continued to make the $2,600 lump sum payments on January 1 and July 1 of each year.

In a decision on the fourth application for an upward modification, Justice Friedman, while agreeing with the Special Referee that the ex-wife's eviction from her Gramercy Park apartment in May of 1995 amounted to a substantial change in circumstances, declined to follow the Referee's recommendation for an upward modification of the award. Justice Friedman wrote, "the plaintiff [ex-wife] put herself on the public dole in 1971, years prior to the divorce" and that she "is not now 'in danger of becoming a public charge.' " In the decision, dated June 18, 1996, he went on to observe that "Ex Husband is not the guardian of the Ex Wife and should not be made to act as such."

In the June 18, 1996 decision, Justice Friedman further ruled that the ex-wife was not entitled to share in the ex-husband's increased income and he rejected her argument that inflation and the rising cost of living had so eroded the original alimony award as to constitute an unforeseen and substantial change in circumstances. With regard to the issue of inflation, he found that it was not something that could be used to support a claim for upward modification. Although the court again denied the ex-wife any increase in her $100 weekly alimony payments, the ex-husband was ordered to make a one-time payment to enable the ex-wife to remove her possessions from storage upon her obtaining an apartment. Because the ex-wife never obtained an apartment, the ex-husband did not have to make the payment.

On May 8, 2007, the ex-wife moved by order to show cause for the upward modification at issue herein. In addition to seeking an increase of the regularly recurring alimony award to an amount sufficient "so that the plaintiff would no longer be a public charge," the ex-wife demands that the ex-husband be made to pay for medical and dental work, including periodontal

services that she estimates could cost as much as $100,000.[2] She further seeks to have the ex-husband meet the educational expenses she has incurred in connection with taking courses at a community college. Finally, the ex-wife, who is presently sleeping in homeless shelters or on the street after having been made to leave the building where she had been allowed to stay with friends, contends that the ex-husband is obligated to buy or rent her an apartment and to pay the monthly rent or carrying charges.

On September 8, 2008, the judge then presiding in the post-judgment part of this court referred the matter to the Office of the Special Referee so that a referee could conduct a hearing and issue a report on the issues raised by the ex-wife's order to show cause. The order of reference identified those issues to be: (1) whether the ex-wife was in danger of becoming a public charge; (2) the appropriate sum of alimony to be paid by the ex-husband to the ex-wife in the event an upward modification was found warranted; (3) whether the ex-husband was obligated to provide the ex-wife with food and housing; and (4) whether the ex-wife was entitled to an award of attorneys' fees.

A hearing was held before the Special Referee on October 20, 2008, at which only the ex-wife testified. Although her counsel sought an adjournment to produce additional witnesses, the Referee denied the request and closed the record. On February 19, 2009, the Special Referee issued his report in which he found that the ex-wife had failed to show a change of circumstances, that she was not entitled to receive an upward modification of the support she was receiving, and that she was not entitled to attorneys' fees. In making his recommendation, the Special Referee stated:

> "I find that despite plaintiff's hardships over the years, she has not sought to alleviate her impoverished condition by obtaining some form of employment, and that at the same time, [she has] demonstrated an ability to sustain herself, albeit at a marginal level, with maintenance payments received from the defendant, as well as other sources of income. Consequently, I find that the evidence submitted by plaintiff does not demonstrate that

---

2. As a recipient of SSI benefits, the ex-wife is covered by Medicaid, the program that pays for health services for individuals who receive needs-based public assistance. The ex-wife does not explain why the medical and dental services she seeks would not be covered by Medicaid.

plaintiff is incapable of being self-supporting, or that there has been a change in circumstances that would warrant an upward modification of maintenance."

The ex-husband seeks to confirm the Special Referee's report. The ex-wife cross-moves to reject the report on the grounds that the report's conclusions are not supported by the evidence and that she was denied a fair and comprehensive hearing. She argues that her homelessness, her medical and dental needs, her being a "public charge" in that she receives SSI and Medicaid benefits, and the fact that the purchasing power of $100 has significantly deteriorated since 1974, all constitute unforeseen and substantial changes in circumstances. This, she contends, requires the court to grant the underlying order to show cause and increase by many times over the amount the ex-husband pays as alimony.

## II. Legal Analysis

The ultimate decision to be made in this proceeding is whether the ex-wife is entitled to an upward modification of the $100 a week alimony that she has received since 1974 from her ex-husband. The Special Referee's report recommends that the application for the upward modification be denied. After reviewing the standard for confirming such a report, the court will determine whether the Referee afforded the ex-wife a fair hearing and, if so, whether his findings are supported by the evidence. In making the latter determination, the court will review the applicable standard that the ex-wife was required to meet for an upward modification. It will then examine the various factors that the ex-wife contends, contrary to what the Referee found, constitute a change of circumstances satisfying the standard. Finally, the court will discuss some additional considerations that bear on the question of the ex-husband's responsibility with regard to providing for his ex-wife.

### A. Standard for Confirming a Special Referee's Report

Courts of New York generally "will look with favor upon a Referee's report, inasmuch as the Referee, as a trier of fact, is considered to be in the best position to determine the issues presented." (*Namer v 152-54-56 W. 15th St. Realty Corp.*, 108 AD2d 705, 706 [1st Dept 1985], quoting *Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn. of City of N.Y.*, 81 AD2d 64 [1st Dept 1981].) "It is well settled that

the report of a Special Referee shall be confirmed whenever the findings contained therein are supported by the record and the Special Referee has clearly defined the issues and resolved matters of credibility." (*Nager v Panadis*, 238 AD2d 135, 135-136 [1st Dept 1997].) "However, the court is not bound by the referee's recommendation and his or her determination." (*RBC Capital Markets Corp. v Bittner*, 24 Misc 3d 728, 733 [Sup Ct, NY County 2009], citing *Garrick-Aug Assoc. Store Leasing v Shefa Land Corp.*, 270 AD2d 68, 69 [1st Dept 2000].) A judge has the discretion to "confirm or reject, in whole or in part . . . the report of a referee." (CPLR 4403.) The court may "make new findings with or without taking additional testimony; and may order a new trial or hearing . . . Where no issues remain to be tried the court shall render decision directing judgment in the action." (*Id.*)

### B. Was the Ex-Wife Afforded a Fair and Comprehensive Hearing?

The ex-wife contends that the Special Referee denied her what she terms "a fair and comprehensive hearing." She points primarily to the Referee's refusal to grant an adjournment to allow her to produce two witnesses. One witness was a yet to be identified official from the Deputy Mayor's Office who was being sought to testify as to the poverty levels in New York City. The other was a social worker from the John Heuss House, a homeless shelter where the ex-wife has stayed and received services. The social worker, whom the ex-wife intended to call to testify as to conditions in the facility, was not available on the date of the hearing.

CPLR 4320 (a) provides that upon the reference of a matter to a Special Referee, the "referee shall conduct the trial in the same manner as a court trying an issue without a jury." It therefore correlates that the same discretion afforded a trial judge to grant or deny an application for adjournment is applicable to the Special Referee. (*Matter of Freire*, 121 AD2d 285, 286 [1st Dept 1986] [finding that "the decision to grant a continuance is discretionary with the (t)rial (j)udge"]; *People v Velazquez*, 211 AD2d 471, 473 [1st Dept 1995] [upholding trial court's denial of counsel's last minute request for a continuance based the witness' unavailability due to his reluctance to take time away from his business]; *People v Shepard*, 162 AD2d 226 [1st Dept 1990] [upholding the trial court's denial of counsel's request for a continuance to locate a witness due to the lack of

favorable or material evidence which the witness would present].)

During the ex-wife's testimony, which was deemed credible by the Special Referee, she described her recent stay at the John Heuss House. The ex-wife's counsel sought to have the social worker from the shelter testify "regarding what happens in John Heuss House." (Transcript of hearing before Special Referee at 43 [Oct. 20, 2008].) Such testimony, inasmuch as it would serve only to confirm the ex-wife's homelessness and the difficult life she leads on the street and in homeless shelters, would be merely cumulative because the ex-wife had already vividly testified to this. (*See Chumsky v Chumsky*, 108 AD2d 714 [2d Dept 1985] [denying a request for a continuance to obtain additional witnesses "(s)ince some of the defendant's witnesses had already so testified, the testimony would have been merely cumulative in this case"].) The Special Referee, therefore, was within his discretion in denying an adjournment for the shelter's social worker to testify because, in his own words, "[w]e got testimony on that. We heard your client testify on that. I am not going to allow that counsel." (Transcript of hearing at 43.)

It was also appropriate for the Referee to refuse to adjourn the hearing so that an official from the City of New York could appear to testify as to current poverty levels. This testimony would be relevant only if the ex-wife was attempting to show that because of a lack of financial resources she was in danger of becoming a public charge. (*See Hadi v Hadi*, 34 AD3d 1153, 1154-1155 [3d Dept 2006] [finding that an ex-wife's income level, without any support from her ex-husband, was "well below the applicable federal 2006 poverty guideline . . . (and) it appears that she is likely to become a public charge"].) It is fully acknowledged that the ex-wife is now a "public charge," in that she is receiving SSI and unable "to provide for . . . her own support without reliance on the public purse." (*Cole v Cole*, 195 Misc 2d 908, 910 [Sup Ct, Greene County 2003].) Moreover, it is equally clear that she has been a "public charge," as the term is used, ever since she began receiving public assistance benefits in 1971, a time that predates the divorce judgment. Thus, the testimony the ex-wife sought to elicit concerning poverty levels would have been irrelevant and duplicative.

The ex-wife also submits that she was denied a fair hearing because the Special Referee exhibited bias against her and "had made up his mind" before the hearing began. A litigant is of course entitled to a fair hearing before an unbiased finder of

fact. (*See e.g. Wayering v County of St. Lawrence*, 140 AD2d 838, 840 [3d Dept 1988].) With this in mind, the court has fully reviewed the transcript of the hearing held before the Special Referee. Although there were instances when the Referee expressed impatience and irritation, it was by and large directed at the ex-wife's counsel, who would continually belabor a point or fail to abide by the Referee's rulings. Viewing the record in its entirety, the court finds that neither the denial of the request for an adjournment to produce witnesses nor the Special Referee's conduct deprived the ex-wife of a fair and comprehensive hearing.

## C. Are the Referee's Findings Supported by the Record?

In order for a Special Referee's report to be confirmed, the findings in the report must be supported by the evidence in the record. Here, the ex-wife argues that the court should reject the report because it goes against the evidence. According to the ex-wife, the evidence presented clearly demonstrates that there has been a change in circumstances adversely affecting her well-being and ability to provide for her needs, which in turn required the Special Referee to find that an upward modification of alimony was warranted.

An alimony award made after trial in a pre-Equitable Distribution Law divorce case may only be modified upon a "clear and convincing showing of a substantial change in circumstances." (*Matter of Hermans v Hermans*, 74 NY2d 876, 878 [1989]; *Bischoff v Bischoff*, 159 AD2d 404 [1st Dept 1990]; *Matter of Archer v Archer*, 142 AD2d 881, 882 [3d Dept 1988]; *Racz v Racz*, 194 AD2d 401 [1st Dept 1993]; Domestic Relations Law § 236 [A] [1].) "This standard requires a particularized showing of facts concerning the personal and financial circumstances of the parties both at the time of the original divorce . . . and at the present time." (*Hermans*, 74 NY2d at 878.) "[C]hanges in the prevailing social and legal climate that may have occurred since the parties were divorced do not satisfy this standard." (*Id.* at 878.) It is within the general discretion of the court, based on the particular facts of the case, to determine if a substantial change in circumstances has occurred and the appropriate relief to award. (*See Vant v Vant*, 161 AD2d 636, 637 [2d Dept 1990].)

Where the action for divorce was commenced prior to the 1980 changes in the law, and where the alimony award was ordered by the court after trial, as opposed to resulting from an

agreement entered into by the parties and incorporated into the judgment, a party need not show the danger of becoming a public charge in order to succeed on an upward modification application. (*See Goodell v Goodell*, 77 AD2d 684 [3d Dept 1980]; *see also Gellman v Gellman*, 280 AD2d 995 [4th Dept 2001]; *cf. McMains v McMains*, 15 NY2d 283 [1965].) Instead, it has been held that a former wife could demonstrate a change of circumstances warranting an increase in alimony "by showing an increase in her needs and in the defendant's means and . . . her financial change of circumstances for the worse, as well as the defendant's financial change for the better." (77 AD2d at 684.) This standard, however, still requires the change in circumstances to be substantial relative to the date of the latest support award or modification and not contemplated by the court or the parties at that time. (*See Hermans*, 74 NY2d at 878.) The fact that the supporting spouse's income and means may have increased does not in itself justify an increase in alimony. (*See e.g. Ward v Ward*, 79 AD2d 683, 683-684 [2d Dept 1980] ["a substantial increase in the husband's salary does not present a substantial change in circumstances to justify an upward modification of alimony"].)

At the hearing before the Referee, the ex-wife detailed the extreme difficulties she has encountered in her life and the developments that have adversely impacted her since the time of the divorce and her previous applications for upward modification. She argues that these factors constitute a substantial change in circumstances. She submits that the Special Referee, in finding that there was no change in circumstances, failed to properly consider these factors.

■ A factor that ex-wife sees as particularly significant is that she is receiving government benefits. This she contends places her "in danger of becoming a public charge." It is true that the ex-wife does indeed receive the majority of her support through public assistance benefits, in this case SSI. It is also true that those benefits do not allow her to lead anything other than the most meager existence. Yet it is equally true that at no point since she first began receiving benefits in 1971—a time that predates the divorce and the alimony award—has she ever *not* received public assistance, be it welfare benefits from the City of New York or SSI from the federal government. As Justice Friedman observed in 1996 when he denied the ex-wife's application for upward modification, an individual cannot be considered to be in "danger of becoming a public charge" when

she is already one. In any event, the applicable standard does not speak of "becoming a public charge"; it speaks of a substantial change in circumstances. The fact that the ex-wife is a recipient of government assistance cannot constitute a change in circumstances because "being a public charge" is precisely what her situation has been at all times relevant to this proceeding.

■ Another factor cited by the ex-wife is the effect inflation has had on the purchasing power of the $100 she receives. It is unquestionable that since the time the ex-husband began paying alimony in 1974, inflation has greatly reduced the value of the award, especially throughout the 1970s and early 1980s when there were years in which inflation grew by double digits. The question, however, is whether inflation can be considered a change in circumstances. In deciding the 1996 application, Justice Friedman answered the question when he wrote:

> "The argument that the cost of living has eroded the original award is of no moment and, indeed if it were to be entertained might well be a basis to upset all previous alimony or maintenance judgments. That there was inflation was well known to all, long ago at the time of the original judgment."

This determination, which was not appealed from, constitutes the law of the case. (*See Hass & Gottlieb v Sook Hi Lee*, 11 AD3d 230, 231-232 [1st Dept 2004]; *Superb Gen. Contr. Co. v City of New York*, 62 AD3d 423 [1st Dept 2009]; *People v Evans*, 94 NY2d 499 [2000].) As a result, it is binding on the instant application, which, although made 13 years later, is still part of the same ongoing postjudgment divorce proceeding that was before Justice Friedman. Even if Justice Friedman's prior ruling was not binding in this instance, it is clear that inflation, and the erosion it has had on purchasing power, is not a factor to be considered in finding a change in circumstances. This is because inflation is clearly something that "already existed [and was] reasonably foreseeable at the time of the entry of the divorce judgment." (*Hermans*, 74 NY2d at 879.)

■ The last factor that the ex-wife cites as grounds for finding a change in circumstances is what might best be described as her general inability to meet her needs. This factor, which is probably the most compelling and problematic, encompasses the ex-wife's homelessness, her medical, dental and psychiatric conditions, and her overall problems in caring for herself. There is simply no way to overstate how difficult and unhappy the ex-wife's circumstances truly are: she has no place to live; she suf-

fers from a slew of mental and physical maladies; she is desperately poor by any standard used to gauge poverty. Still, under the law applicable to this case, the inquiry to be made with regard to a request for an upward modification comes down to this: Does the wife's present circumstances differ in any substantial way from what they were when the judgment was granted and, more importantly, when the last application for upward modification was denied in 1996? The answer is that little has really changed with regard to the state of the ex-wife's life, and what changes have occurred cannot be said to have been unforeseen. While the ex-wife's poverty has increased because of inflation, her medical conditions have worsened by the onset of old age, and her homelessness has been exacerbated by the fact that she no longer has friends willing or able to give her a place to stay, her situation, as sad and desperate as it is, remains basically the same as it has been for these many years.

In his report, the Special Referee mistakenly refers to Domestic Relations Law § 236 (B) (9) (b), which applies only to the modification of an award of maintenance made after the Equitable Distribution Law went into effect in 1980. Nevertheless, he correctly found that the ex-wife failed to demonstrate a substantial change in circumstances, the sole ground upon which an upward modification of an award of alimony can be based under Domestic Relations Law § 236 (A) (1), the statute that applies to this pre-1980 divorce action. Thus, the court finds that the Referee's report, with its recommendation that the application for upward modification be denied, is supported by the evidence in the record.

## D. Additional Considerations

Because the Special Referee conducted a hearing that was fair and comprehensive, identified the issues, resolved all matters of credibility, and reached a conclusion that is supported by the evidence, the report must be confirmed. (*Nager v Panadis*, 238 AD2d at 135-136.) But by confirming the report, I am not endorsing all the Referee's findings. In particular I take issue with his point that the ex-wife "has not sought to alleviate her impoverished condition by obtaining some form of employment." She does not work simply because she is unable to work.

As I did not conduct the hearing in this matter, I have not seen the ex-wife. I have, however, seen photographs of her— photographs which vividly depict her rotting teeth and her swol-

len legs—as well as pictures of the depressing conditions in the shelters where she often spends the night. It is impossible not to acutely feel how great the tragedy is that has befallen this woman's life, with the only glimmer of hope being that at her advanced age and in the circumstances she has been reduced to, she has still found the wherewithal to enroll in community college.

By the same token, it is hard not to have some empathy for the ex-husband as well—his wealth and success notwithstanding. Today, most couples who divorce after short-term childless marriages divide their property, say goodbye, and never have to deal with one another again. The ex-husband, of course, has met a far different fate here. Instead of being able to close the book on a painful chapter from his youth, he has grown old forever tied to the ex-wife by the alimony provision of the 1974 divorce decree and the ex-wife's repeated applications for upward modification.[3] And while the ex-husband does not dispute that he could easily afford to pay a far greater sum of alimony, he has felt constrained to fight against the ex-wife's repeated efforts to obtain more from him. He has done so because he believes it is not right to make him assume further responsibility for his ex-wife's situation merely because they happened to have been married for a short time decades ago.

This brings us at last to the overriding issue: Just how far does the ex-husband's duty to care for the ex-wife extend? At one point in our legal history, a husband, following a divorce, had the absolute duty to forever care for and support his wife. (*See Romaine v Chauncey*, 129 NY 566 [1892].) With the advent of time and the recognition of the evolving role of women in the workforce and in marriage, the concept of alimony began to slowly move towards a more gender-neutral obligation founded on each party's finances and needs. (*See Phillips v Phillips*, 1 AD2d 393 [1st Dept 1956].) This move accelerated with the enactment of the Equitable Distribution Law in 1980. The law replaced alimony, "which often served as a means of lifetime support and dependence for one spouse upon the other long after the marriage was over," with spousal maintenance, "which seeks to allow 'the recipient spouse an opportunity to achieve

---

**3.** Some perspective as to just how long these proceedings have gone on is gained from the fact that when the divorce action began, the ex-husband's attorney, who has represented his client through every phase of the case, had only recently been admitted to practice in New York; he is now nearing retirement.

[economic] independence.' " (*O'Brien v O'Brien*, 66 NY2d 576, 585 [1985], quoting Assembly Mem, 1980 NY Legis Ann, at 130.)

Unfortunately, the ex-wife has never achieved anything approaching economic independence, and she remains dependent on her SSI public assistance benefits, supplemented by the ex-husband's alimony payments. And while the ex-husband does not object to continuing to pay the $100 alimony he has always paid, he has good reason to object to being made to assume a greater share of the ex-wife's care and support. In the final analysis, there is no compelling reason why he should be held any more responsible than society as a whole for what has happened to the ex-wife. Nothing in the record suggests that he caused the ex-wife's problems or that anything involving their marriage somehow contributed to her leading the life that she has. If anything, it appears that the seeds of the ex-wife's mental illness—the root cause of her disability and homelessness—were present long before the parties spent their brief time together.

The ex-husband has faithfully complied with the obligations imposed on him by the divorce decree and he has not missed making a single alimony payment over the past 35 years. No matter how great the ex-wife's difficulties may be, her life is not the ex-husband's cross to bear. There is no reason why he should shoulder any greater responsibility for her than he already has.

## Conclusions

Because the hearing conducted by the Special Referee was fair and because the conclusions reached are supported by the record, the Special Referee's report recommending that the application for upward modification be denied must be confirmed. Accordingly, defendant ex-husband's motion to confirm the report is granted, and the plaintiff ex-wife's cross motion to reject the report is denied. The ex-wife's underlying motion seeking upward modification of the alimony award and an award of attorneys' fees is denied in all respects. The ex-husband is directed to continue paying the ex-wife alimony in the sum of $100 a week. The award will continue at this amount until the death of either the ex-husband or the ex-wife.